16 P.3d 915

**CITY OF KELLOGG, an Idaho Municipal Corporation; and Silver Mountain Corp., an Oregon Corporation, Plaintiffs–Counterdefendants–Respondents,**

v.

**MISSION MOUNTAIN INTERESTS LTD., CO., a Limited Liability Company, Defendants–Counterplaintiff–Appellant.**

No. 25309.

Supreme Court of Idaho, Coeur d'Alene, October 2000 Term.

Dec. 19, 2000.

Preston, Gates & Ellis, Coeur d'Alene; J. Todd Reuter, Spokane, WA, for appellant. J. Todd Reuter argued.

Evans, Keane, Kellogg, for respondents. Charles L.A. Cox argued.

WALTERS, Justice.

This is an appeal from a decision of the district court determining that a written agreement constituted a valid conveyance of property. We affirm.

## FACTS AND PROCEDURE

This case has a long and somewhat convoluted background. The respondent City of Kellogg, Idaho, is the owner of a recreational ski area known as the Silver Mountain Resort. The ski resort consists in part of a leasehold interest in land obtained from Bunker Limited Partnership (Bunker) as the lessor under a lease dated June 30, 1989, and several subsequent corrected and amended leases, all of which we will refer to as the City Lease. On December 19, 1990, the parties to the lease entered into an agreement purporting to convey ownership to the City of a lodge known as the Tamarack Lodge, together with the land on which the lodge is located, and Chair Lift No. 4, all of which was situated on the leased property. In exchange for the conveyance from Bunker Limited Partnership, the City agreed to allow Bunker to hook up to the water and sewer lines constructed in the area by the City to service the lodge. The hookup right was for several "units" on an as available basis and was not transferable. The City further agreed "to deed the land under the lodge to Bunker Limited Partnership on the termination of the lease for the Silver Mountain Resort."

In November 1994, Bunker sold its interest in the real property described in the City Lease to the appellant, Mission Mountain Interests Ltd., Co. (Mission). Bunker also executed an assignment of its interest in the City Lease to Mission. Bunker conducted unsuccessful negotiations with the City to permit a transfer to Mission of Bunker's right to the water hookups conveyed by the December 19, 1990, agreement.

During the fall of 1994, the City became in default on its obligations on the revenue bonds used for financing construction and development of the ski resort. The City entered into a forbearance agreement with the indemnitor on the revenue bonds and began searching for an entity to assume the operation of the ski resort. In May of 1996, the City assigned its interest in the City Lease to Silver Mountain Corporation.

The City of Kellogg and Silver Mountain Corporation subsequently filed an action against Mission Mountain Interests Ltd., Co., in September 1996. The plaintiffs alleged they had been damaged by Mission's trespass and by breach of the lease agreement through interference with the plaintiffs' quiet enjoyment of the leased property. The plaintiffs sought a declaratory judgment quieting title to the surface rights of the leased area and for an injunction to prohibit the construction of a logging service road across the ski resort. Mission answered the complaint and asserted various counterclaims including breach of the lease by the plaintiffs for failing to maintain the Tamarack Lodge, the water supply, the roads on the leasehold, the storage tanks that were subject to government regulation, and for removing timber from the property without the lessor's consent. Mission also submitted a counterclaim seeking damages for waste, for a declaratory judgment that the sublease between the City and Silver Mountain Corporation effectively terminated the City Lease, and for damages

stemming from the plaintiffs' alleged trespass and conversion. In answering Mission's counterclaims, the plaintiffs asserted, among other claims, their ownership of the Tamarack Lodge, the land upon which the lodge is located, and the ski lift (Chair Lift No. 4) by virtue of the December 19, 1990, agreement between the City and Bunker Limited Partnership, the predecessor in interest of Mission Mountain Interests Ltd., Co.

The plaintiffs moved for partial summary judgment on two of the counterclaims, which put at issue whether the transfer from the City to Silver Mountain Corporation was permitted under the terms of the City Lease. Following a hearing on the motion, the district court issued a memorandum decision denying summary judgment on the ground that a factual question existed as to the legitimate or fraudulent nature of the transaction between the City and Silver Mountain Corporation.

The plaintiffs renewed their motion for summary judgment and provided supplemental information obtained by the deposition of Mark Bee, the president of the indemnitor who had threatened to foreclose as a result of the City's default in its revenue bond obligations. The district court thereafter determined that there was no evidence to support Mission's contention of a sham transaction and granted summary judgment to the plaintiffs on that issue. The district court also found as matter of law that the redemption of the revenue bonds did not terminate the City Lease. In November 1997, the district court entered an order granting partial summary judgment to the plaintiffs on the defendant's first counterclaim alleging breach of the lease by subletting the City Lease to Silver Mountain Corporation and on the defendant's third counterclaim alleging trespass.

The plaintiffs then filed a second motion for summary judgment regarding all of the remaining claims. In their memorandum in support of the motion, the plaintiffs asserted in relevant part:

As to other alleged breaches, ... the following facts are not in issue:

1. Ownership of the Tamarack Lodge was transferred to the City by agreement with Bunker Limited Partnership on December 19, 1990, almost four years prior to Mission Mountain acquiring the reversionary interest of the City Lease.

Mission responded by filing a cross-motion for summary judgment on the discrete issue of ownership with respect to the lodge, the land upon which the lodge was located, and of the ski lift. Mission claimed that the December 19, 1990, agreement on which plaintiffs' based their claim of ownership was defective and invalid for the purpose of effecting a conveyance. Mission also argued that it had become the owner of the disputed property pursuant to a 1994 deed from the Bunker Limited Partnership with respect to the leasehold interest where the lodge and ski lift are located.

The district court entered a memorandum decision and order granting the plaintiffs' second summary judgment motion and denied Mission's cross-motion for summary judgment. A final judgment was entered on December 14, 1998. Mission Mountain Interests Ltd., Co., timely appealed from the judgment.

## ISSUES ON APPEAL

Mission raises two issues on appeal. First, Mission submits that the district court erred in holding that the December 19, 1990, agreement complies with the statutory requirements to effectuate a valid conveyance of real property. Contrary to the district court's ruling, Mission argues that the agreement lacked three elements essential to a valid conveyance: (a) the complete address of the grantee, (b) words of grant, and (c) a sufficient description of the property to be conveyed. As its second issue, Mission contends that it should receive an award for attorney fees based on I.C. § 12–120(3). Similarly, the City also makes a claim for fees on appeal, but pursuant to an express provision in the City Lease. All of the issues raised in this appeal concern questions of law.

## STANDARD OF REVIEW

A review by this Court of a district court's decision granting a motion for summary

judgment is the same as that required of the district court when ruling on the motion. Summary judgment shall be granted if the "pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56. In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *Friel v. Boise City Housing Authority,* 126 Idaho 484, 887 P.2d 29 (1994). If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review. *Id.*

## DISCUSSION

### I.

#### *Grantee's Address*

■ In analyzing whether a conveyance has been made, a court must first consider whether the agreement of the parties meets the requirements set forth in the relevant statutes. Idaho Code § 55–813 defines a conveyance to embrace every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills. Idaho Code § 55–601 provides that a conveyance of an estate in real property may be made by an instrument in writing, subscribed by the grantor, and that "[t]he name of the grantee and his complete mailing address must appear on such instrument."

Mission argues that the address requirement of Idaho Code § 55–601 was not satisfied by the December 19, 1990, agreement which contains only the name of the City of Kellogg, the grantee, with no address whatsoever appearing on the face of the document. We disagree. The agreement recited that it was entered into between Bunker Limited Partnership, an Idaho limited partnership, and the City of Kellogg, a municipal corporation. The City of Kellogg is a well-known municipality in the State of Idaho. It has corporate boundaries and is located in

Shoshone County. The address of the City of Kellogg is the City of Kellogg. We hold that the identification of the City in the agreement as a municipal corporation is sufficient to satisfy the requirement of I.C. § 55–601 relating to disclosure of the address of a grantee, when the grantee is a municipality.

### II.

#### *Words of Grant*

■ Mission next maintains that the December 19, 1990, agreement is defective in that the words of grant used in the agreement do not evidence a present intent to transfer title but rather show a promise to convey in the future. The agreement provides that the City "desires to purchase the lodge and ski lift" and that Bunker "agrees to sell to the City the lodge and the land on which it sits, along with the ski lift," which Mission claims expresses only a promise to convey in the future.

■ In construing a deed the trial court should, if possible, give effect to the intent of the parties. When issues arise concerning the meaning of language used and its operation upon the property being conveyed, the general rule is that the intent of a plain and unambiguous deed must be ascertained from the deed, and parol evidence is not admissible. *Vanoski v. Thomson,* 114 Idaho 381, 382, 757 P.2d 244, 245 (Ct.App.1988). If a deed is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact. *Nationsbanc Mortgage of New York v. Cazier,* 127 Idaho 879, 883, 908 P.2d 572, 576 (Ct.App.1995), *citing Latham v. Garner,* 105 Idaho 854, 673 P.2d 1048 (1983). In interpreting and construing deeds, uncertainties should be treated as ambiguities subject to be cleared up by resort to intention of the parties as gathered from the deed, circumstances attending and leading up to its execution, subject matter and situation of the parties at the time. *Id., citing Hogan v. Blakney,* 73 Idaho 274, 251 P.2d 209 (1952). *See generally Crenshaw v. Crenshaw,* 68 Idaho 470, 199 P.2d 264 (1948) (intent to transfer title may be determined from surrounding circumstances). The determination of

whether an agreement is ambiguous is a question of law over which we may exercise free review, and in determining whether a contract is ambiguous, our task is to ascertain whether the contract is reasonably subject to conflicting interpretations. *Bondy v. Levy,* 121 Idaho 993, 996–97, 829 P.2d 1342, 1345–46 (1992).

The district court concluded that the words in the agreement constituted sufficient evidence of an intent to make a present conveyance. The district court relied on *Martin v. Adams,* 104 Mass. 262, 1870 WL 8916 (1870), in which the words "agree to sell" were interpreted by the court to evidence a present sale, upon the court's consideration of the circumstances surrounding the conveyance. The district court found in the instant case, as in *Martin,* that the property purportedly being conveyed was already in the possession of the grantee, nothing remained to be done by the seller (Bunker), and there was nothing in the document to show that title was not to pass until the happening of some future event. Referring to the four corners of the executed agreement, the district court found that only if the parties intended to make a present conveyance thereby would paragraph four [1] of the agreement have any meaning.

There is substantial evidence in the record to support the district court's determination that the words of the agreement reflect the parties' intent to transfer title at the time of the conveyance. We agree with the district court's construction of the language in the agreement, and the district court's decision in this regard is affirmed.

### III.

#### Description of the Property

Mission claims that another defect exists in the agreement, that is, the description of the property as "the lodge and the land on which it is located, along with the ski lift," which Mission argues is insufficient and unclear. Mission contends that the district court improperly considered a map attached to the recorded agreement, because the map was not referred to in the agreement and appears to have been attached to the agreement simply in order to have it recorded with the agreement as one document. Mission further asserts that the map does no better than the agreement itself in informing where the lodge and lift are on the ground and thus cannot provide an adequate description.

As a general rule, a written instrument purporting to convey real property must contain a sufficient description of the property. *Worley Highway District v. Kootenai County,* 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). A description contained in a deed will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers. *Haney v. Molko,* 123 Idaho 132, 844 P.2d 1382 (Ct.App.1992).

In *Haney,* the Court of Appeals concluded that the property descriptions in the Certificate of Sale and the IRS Deed, which indicated section number, township and range and tax parcel numbers were adequate to convey title. The court reasoned that by referring to the legal descriptions of the tax parcel numbers that were provided, it was possible for someone to identify exactly what property was being conveyed. *Id.* at 136, 844 P.2d at 1386.

The description contained in the December 19, 1990, agreement, unlike the description in *Haney,* does not refer to a separate instrument containing a legal description of the property. The district court found that the map identified a portion of the Coeur d'Alene National Forest, and shown on the map are "portions of Sections 13, 18, 19 and 24, Township 48 North, and Ranges 2 East and 3 East, with a straight line running between two circles and slightly oblique to the vertical line separating Ranges 2 East and 3 East, with designations 'chair lift,' 'ski lodge,' and two references near to the two circles each reading 'ski tower.' "

---

1. Paragraph four of the December 19, 1990, agreement reads as follows:

    The City agrees to deed the land under the lodge to Bunker Limited Partnership on the termination of the lease for the Silver Mountain Resort.

There was no evidence that either the City or the grantor, Bunker, were uncertain or confused concerning the property conveyed by the agreement. Evidently, they knew exactly where the Tamarack Lodge and Chair Lift No. 4 were located, since possession of these items already had been transferred to the City under the lease before the December 19, 1990, agreement was executed. Furthermore, there was no evidence presented to show that there was any more than one "Tamarack Lodge" or "Chair Lift No. 4" as fixtures located within the area known as the Silver Mountain Ski Resort. The agreement provided that the City would "deed the land under the lodge to Bunker Limited Partnership on the termination of the lease for the Silver Mountain Resort." Thus, the quantity of land involved was only the amount directly underneath the lodge, and not some other, larger parcel within the ski resort area.

We conclude that under the circumstances of this case, the subject property was sufficiently described so it was possible for someone to identify exactly what property was being conveyed. Accordingly, we affirm the district court's conclusion that the description of the property conveyed was not defective.

## IV.

### Attorney Fees

Both parties request an award of attorney fees on appeal, based on different authority. Mission cites I.C. § 12–120(3) as the basis for recovery of attorney fees. The statute applies where the suit involves a "commercial transaction." The City maintains that it is entitled to an award of fees, relying on an express provision in the City Lease.

██ Attorney fees under I.C. § 12–120(3) are not appropriate unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover. *Sun Valley Hot Springs Ranch v. Kelsey*, 131 Idaho 657, 962 P.2d 1041 (1998). Furthermore, recovery of attorney fees under I.C. § 12–120(3) is limited to prevailing parties.

██ The appeal in this case concerns the district court's ruling on Mission's counter-claim that the City breached the lease by failing to maintain the Tamarack Lodge and the water supply. The district court granted summary judgment in favor of the City and against Mission, concluding that the City owned the lodge together with the land on which the lodge is located and also the ski lift, by virtue of the December 19, 1990, agreement and thus could not be deemed in breach of the lease agreement, as Mission claimed. We have upheld the district court's decision; therefore, Mission is not the prevailing party in this proceeding and is not entitled to attorney fees under I.C. § 12–120(3).

██ The City's request for fees is based on the terms of the City Lease from Bunker Limited Partnership. This appeal, however, involves the City's successful assertion of ownership of the Tamarack Lodge, the land on which it is located, and the ski lift, pursuant to the December 19, 1990, agreement, not under the City Lease. Consequently, the City is not entitled to attorney fees under a provision in the City Lease. *See Kessler v. Tortoise Development, Inc.,* 134 Idaho 264, 1 P.3d 292, 299 (2000).

## CONCLUSION

The district court did not err in granting summary judgment to the plaintiffs and in denying the defendant's motion for summary judgment. The judgment is affirmed. Costs, but not attorney fees, are awarded to the respondents.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.