65 P.3d 525

Jay C. NEIDER, Plaintiff–Appellant,

v.

Glen A. SHAW and Dorothy Shaw, husband and wife, and David F. and Peggy R. Johnson, husband and wife, and Robert S. and Clovia McLeod, husband and wife, Larry D. and Gene P. Livingston and Rebecca A. Norman, and Steven J. Humphreys, and Francis C. and Viola L. Eckhart, husband and wife, and Gene B. and Cheryl L. Cleverly, husband and wife, and Nampa Highway District, a political sub-division of the State of Idaho, Defendants–Respondents.

No. 28022.

Supreme Court of Idaho,
Boise, January 2003 Term.

March 7, 2003.

White Peterson Morrow Gigray Rossman Nye & Rossman, PA, Nampa, for appellant. Christopher S. Nye, Nampa, argued.

Kenneth F. White, Nampa, for respondents Shaw, et al.

Gigray Miller & Downen, Caldwell, for respondent Nampa Highway District. William F. Gigray Jr., Nampa, argued.

KIDWELL, Justice

Jay Neider (Neider) appeals the district court's decision to quiet title in property located in Bowmont Township, Canyon County, Idaho, in favor of the Shaws, Johnsons, McLeods, Livingstons, Normans, Humphreys, Eckharts, and Cleverlys (collectively, Neighbors), and the Nampa Highway District (NHD). The judgment of the district court is affirmed.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Sometime prior to 1908, the Idaho Northern Railroad Company (INRRC or the Railroad), later succeeded by the Union Pacific Railroad Company (UPR or the Railroad), built a rail line through Canyon County running northeast and southwest.

In 1908, Mr. and Mrs. J. Fremont Bow (Bows) purchased an 80–acre tract of land in Canyon County. The rail line ran through the northwest corner of the Bow's land. On March 14, 1910, the Bows conveyed an interest in a triangular portion of the northwest corner of their 80–acre tract to the Railroad (the railroad property). The conveyance instrument contained a handwritten clause that stated:

> [p]rovided: nevertheless that this deed is made for right of way, station, sidetrack and warehouse purposes. Should [the Railroad] fail to establish and maintain station and sidetrack, this deed shall be null and void and said land shall revert back to the said J. Fremont Bow and C.A. Bow, his wife, or their legal heirs.

The Railroad used the railroad property until 1994, when it abandoned the rail line.

In July 1910, the Bows recorded a plat consisting of their 80–acre tract, creating the township of Bowmont. The Bowmont plat dedicated public roads, including First through Eighth Streets, running east and west, and First through Fifth Avenues, running north and south. "Fourth Street" is called Main Street. First Avenue, running north and south on the western edge of the plat, is known as "Track Road." Though platted, not all of these roads, Second Avenue north of Main Street in particular, have been built or regularly maintained.

The boundaries of the triangular railroad property can be described as: (1) the eastern boundary follows the northeast/southwest angle of the rail line, the rail line is located inside the eastern boundary; (2) the western boundary is Track Road; and (3) the northern boundary is First Street. The eastern and western boundaries form an acute angle at approximately Track Road and Seventh Street.

Sometime before 1935, an unknown party built an irrigation canal running parallel to the rail line. This canal is located inside the eastern boundary of the railroad property, on the east side of the rail line. An unknown party built a fence between the rail line and the canal sometime between 1935 and 1945.

In 1994, at a community meeting, the Railroad announced it intended to remove the railroad track and sell the railroad property. NHD proposed to buy the railroad property, but ultimately did not because UPR refused to give a warranty deed. After this 1994 meeting, the Railroad discovered the handwritten language in the conveyance instrument and quitclaimed the railroad property to Evelyn and Eula Bow, the Bow's living heirs.

In 1997, the NHD re-aligned Track Road and graveled the portion between Main Street and Eighth Street. The record suggests that prior to 1997, Track Road ran at the northeast/southwest angle of the rail line. The 1997 realignment brought Track Road into accord with the Bowmont plat. On February 1, 2001, Neider purchased the railroad property from Evelyn Bow.

Neider hired Gordon Anderson (Anderson), a licensed surveyor, to survey the railroad property. The survey confirms the canal was built inside the eastern boundary of the railroad property between the rail line and the eastern boundary, and the fence was built between the canal and the rail line. The survey also shows that Second Avenue north of Main Street, if built, would physically separate the railroad property from the Neighbors' property. Anderson concluded that the fence encroached upon the railroad property by twenty to thirty feet. Anderson also concluded that the realigned Track Road encroached upon the railroad property by fifteen to eighteen feet.

Each of the Neighbors, who live on the east side of the railroad property, believed the fence to be the western boundary of their property when they acquired their property. At least one of the Neighbors was told by a real estate agent that the fence was the boundary marker. Several of the Neighbors have continually allowed their livestock to graze up to the fence line and drink from the canal located on the railroad property.

On June 20, 2000, Neider filed an action to quiet title in the twenty to thirty foot wide strip of land along the eastern boundary of the railroad property. He also sought to quiet title in the portions of the railroad property claimed by the NHD, which include the portion of Main Street running east and west between Track Road and Second Avenue, and the fifteen to eighteen foot portion of the realigned Track Road running north and south between Main Street and Eighth Street.

On May 11, 2001, the district court held a bench trial. On October 24, 2001, the district court entered Findings of Fact and Conclusions of Law, quieting title to the Neighbors and NHD. On December 19, 2001, the district court entered judgment.

Neider timely filed this appeal.

## II.

### STANDARD OF REVIEW

■ This Court will only set aside a trial court's findings of fact if they are clearly erroneous. I.R.C.P. 52(a) (2002); *McCray v. Rosenkrance*, 135 Idaho 509, 513, 20 P.3d 693, 697 (2001); *In re Williamson v. City of McCall*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). In deciding whether findings of fact are clearly erroneous, this Court determines whether the findings are supported by substantial, competent evidence. *In re Williamson* at 454, 19 P.3d at 768. Evidence is substantial if a reasonable trier of fact would accept it and rely on it. *Id.* Findings based on substantial, competent evidence, although conflicting, will not be disturbed on appeal. *Bolger v. Lance*, 137 Idaho 792, 53 P.3d 1211, 1213 (2002).

■ This Court exercises free review over conclusions of law. *Id.*

## III.

### ANALYSIS

**A. Neider's Claim For Quieting Title Against the Neighbors:**

**1. The fence near the eastern boundary of the railroad property marks a boundary by agreement with the Neighbors.**

Neider argues that he and the Neighbors are not adjoining landowners because the irrigation canal and Second Avenue, a platted road, separate the railroad property from the Neighbors' property. Conversely, Neider argues the fence was intended as a barrier to allow livestock to drink from the canal and keep them off the railroad tracks, not as a boundary marker. The Neighbors contend they have treated the fence as the boundary marker from the time they acquired their property.

■ The doctrine of boundary by agreement is well established in Idaho. Boundary by agreement requires: (1) an uncertain or disputed boundary involving adjacent properties, and (2) an agreement fixing the boundary. *Cox v. Clanton*, 137 Idaho 492, 495, 50 P.3d 987, 990 (2002). The agreement may be express or implied by the conduct of the parties. *Id.* Where a fence is alleged to establish a boundary by agreement, and there is no evidence regarding who built the fence or why they built it, the fact that the fence has been in existence for a number of years strongly suggests it was put in place as a boundary by agreement. *Id.; see also Johnson v. Newport*, 131 Idaho 521, 523, 960 P.2d 742, 744 (1998) (finding fence in existence for sixty years established boundary by agreement); *Dreher v. Powell*, 120 Idaho 715, 718–19, 819 P.2d 569, 572–73 (Ct.App. 1991) (finding fence in present location for over sixty years established boundary by agreement); *Herrmann v. Woodell*, 107 Idaho 916, 920, 693 P.2d 1118, 1122 (Ct.App. 1985) (neighboring landowners accepted fence as boundary for many years). Which party pays property tax on the disputed land is irrelevant to determining a claim based on boundary by agreement. *Cameron v. Neal*, 130 Idaho 898, 901, 950 P.2d 1237, 1240 (1997) (citing *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981)). Further, an agreed boundary binds successors in interest who purchase with notice, actual or constructive. *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954).

**a. Substantial, competent evidence supports the district court's findings of fact.**

■ The district court found, based on several exhibits, including the Bowmont plat

and Anderson's survey, that Second Avenue north of Main Street, while platted, has never been built. Second Avenue, if built, would become the east boundary of the railroad property and the west boundary of the Neighbors' properties. The district court also found that the Anderson Survey shows the irrigation canal was built inside the eastern boundary of the railroad property and that the fence was built between the canal and rail line. While no one knows who originally built the fence, or why, the evidence presented at trial shows the fence has been in existence for over fifty years. Dale Livingston, one of the Neighbors, testified to the fence's existence since at least 1945. Francis Eckhart, a ditch rider since 1957, testified as to the fence's existence since 1946. Each of the Neighbors has considered the fence to be the western boundary of their property from the time they acquired their property. The fence has existed since at least 1946 and some of the Neighbors have allowed their cattle to graze up to the fence line since the 1960's.

Neider claims the fence is not a boundary marker, but rather, a barrier constructed to prevent cattle from roaming onto the railroad track. However, Neider presented no evidence to support this theory.

### b. Neider and the Neighbors are adjoining landowners for purposes of establishing a boundary by agreement.

█ Neider argues that a boundary by agreement is impossible, as a matter of law, because he and the Neighbors are not adjacent landowners due to the fact that Second Avenue, a platted and dedicated road, separates the railroad property and the Neighbors' property. The Neighbors contend that Second Avenue has never been built, and therefore, their property is adjacent to the railroad property.

█ At the time Mr. Bow recorded the plat of Bowmont, the Revised Code of Idaho stated: "The acknowledgment and recording of such plat is *equivalent* to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use...." Idaho Rev.Code § 2304 (1908) (emphasis added) (current ver-

sion with amendments at Idaho Code § 50–1312 (2002)). The recording of a plat is equivalent to a deed in fee simple, but it is not a deed in fee simple: "While the acknowledgment and recording is equivalent to a deed in fee simple, it is not a deed in fee simple, and does not give the public the same right to sell or dispose of the same that a private party has to land for which he holds the title in fee simple." *Shaw v. Johnston,* 17 Idaho 676, 682, 107 P. 399, 399–400 (1910). When land is dedicated as a street for public use, the landowner owns to the center of the street and the public acquires an easement, not a title in fee simple. *Id.* at 682–83, 107 P. at 400–01 (citing Idaho Rev.Code § 3091 (1908)) (current version with amendments at Idaho Code § 55–309 (2002)).

Second Avenue, the platted and dedicated road that would separate the railroad property from the Neighbors, has never been built. Even if it were built, Neider and the Neighbors would own to the center of the street, subject to the public easement. Neider and the Neighbors are adjacent landowners for purposes of establishing a boundary by agreement.

The district court's finding that the fence has been in existence for over fifty years is supported by substantial, competent evidence. Therefore, because Neider and the Neighbors are adjoining landowners regardless of whether Second Avenue is built or not, the fence running along the eastern border of the railroad property marks a boundary by agreement by which Neider is bound.

### B. Neider's Claim For Quieting Title Against NHD:

### 1. The district court properly quieted title in NHD because the Bows conveyed an easement, not a fee simple, to the railroad.

█ Neider argues that when the Bows conveyed the railroad property, they conveyed a fee simple subject to a condition subsequent to the Railroad. Therefore, when the Bows recorded the Bowmont plat in July of 1910 dedicating roads to the public, they attempted to convey an interest in property they did not own. As a result, Neider

contends NHD has no right in the portion of Main Street running east and west between Track Road and Second Avenue and the fifteen to eighteen foot portion of the realigned Track Road running north and south between Main Street and Eighth Street, both of which lie on the railroad property. NHD adopts the district court's conclusion that the Bows conveyed an easement to the Railroad so that the later recorded Bowmont plat properly dedicated those roads that lie on the railroad property. As a result, NHD argues it rightfully retains an interest in the roads dedicated by the Bowmont plat.

When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction. *Daugharty v. Post Falls Highway Dist.*, 134 Idaho 731, 735, 9 P.3d 534, 538 (2000) (citing *Gardner v. Fliegel*, 92 Idaho 767, 770, 450 P.2d 990, 993 (1969)). The intent of the parties is determined by viewing the conveyance instrument as a whole. *Id.* (citing *Doyle v. Ortega*, 125 Idaho 458, 461, 872 P.2d 721, 724 (1994)). Interpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language. *City of Kellogg v. Mission Mtn. Interests Ltd., Co.*, 135 Idaho 239, 243, 16 P.3d 915, 919 (2000). Interpretation of an ambiguous deed is a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction. *Id.* Whether a deed is ambiguous is a question of law. *Id.* at 244, 16 P.3d at 920. Ambiguity exists only if language of the conveyance instrument is subject to conflicting interpretations. *Id.*

This Court recently ruled on the issue of whether a conveyance instrument granted a fee simple or easement to a railroad in *C & G, Inc. v. Rule*, 135 Idaho 763, 25 P.3d 76 (2001). In *C & G*, this Court held that the conveyance instrument unambiguously conveyed a fee simple, not an easement, because, while the instrument was entitled Right of Way Deed, none of the substantive provisions referred to a right-of-way. *Id.* at 767, 25 P.3d at 80. The conveyance instrument in *C & G* did not limit the use of the land to "railroad purposes" and it lacked any language indicating a reversionary interest in

the grantors. *Id.* This Court, however, recognized that use of the term right-of-way in the substantive portions of a conveyance instrument creates an easement. *Id.*

The conveyance instrument from the Bows to the Railroad contained some printed language and a handwritten provision stating that the "deed is made for *right of way*, station, and warehouse purposes." While the printed language uses terms such as "grant," "bargain," and "sell," the handwritten clause unambiguously reflects the Bows' intent to convey only an easement to the Railroad. Further, the Railroad's interest in the land was limited to railroad purposes by the handwritten clause.

In this case, a substantive provision of the conveyance instrument, in handwriting, grants a "right of way" to the Railroad, which this Court has identified as language that creates an easement. The conveyance instrument from the Bows to the Railroad granted an easement to the Railroad rather than a fee simple. As a result, the Bows owned the land in which they dedicated public streets when recording the Bowmont plat.

By virtue of the recorded plat, Neider was on notice of NHD's interest in the roads dedicated in the Bowmont Plat. Therefore, NHD retains an interest in the roads. *See Boise City v. Fails*, 94 Idaho 840, 845, 499 P.2d 326, 331 (1972) (quoting *Hanson v. Proffer*, 23 Idaho 705, 132 P. 573 (1913)) (ruling that after streets are dedicated by the recording of a plat, the only way title can revert to the grantor is if the dedication is vacated as provided by law).

## C. The Neighbors Are Not Entitled To An Award Of Attorney Fees On Appeal.

The Neighbors seek attorney fees pursuant to Idaho Appellate Rule 41. However, I.A.R. 41 alone does not provide a foundation for an award of attorney fees. *Robbins v. County of Blaine*, 134 Idaho 113, 120, 996 P.2d 813, 820 (2000). Rather, some other statutory or contractual authority must authorize an award. *Id.* The Neighbors failed to provide authority in addition to I.A.R. 41 to support their request for attorney fees. Therefore, this Court denies the

Neighbors' request for attorney fees. NHD does not request attorney fees on appeal.

### IV.

### CONCLUSION

The district court's findings of fact regarding the fence are supported by substantial, competent evidence. Neider and the Neighbors are adjoining landowners for purposes of establishing a boundary by agreement. Therefore, the district court's conclusion that the fence marks a boundary by agreement, quieting title in the Neighbors, is affirmed. The Bows conveyed an easement, not a fee simple, to the Railroad. Therefore, NHD retained an interest in the roads platted on the recorded Bowmont plat and the district court's conclusion quieting title in NHD is affirmed. No attorney fees are awarded on appeal. Costs to the respondents.

Chief Justice TROUT and Justices SCHROEDER and EISMANN concur. Justice WALTERS concurs in the result.