# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 49184 / 49522

GERINGER CAPITAL, dba GERINGER CAPITAL, INC., a Nevada corporation,

    Plaintiff-Appellant,

v.

TAUNTON PROPERTIES, LLC, a Minnesota limited liability company; COMMERCIAL NORTHWEST, LLC, an Idaho limited liability company, dba Commercial Northwest Property Management; BOTTOM LINE II, LLC, an Idaho limited liability company, dba KW Commercial; PACIFIC COMMERCIAL REALTY ADVISORS - BOISE, LLC, an Idaho limited liability company,

    Defendants-Respondents,

and

LCA-CA I, LLC, a California limited liability company; MW WOODSIDE LAND, LLC, a Delaware limited liability company; and MW WOODSIDE, LLC, a Delaware limited liability company,

    Defendants.

_____

GERINGER CAPITAL, dba GERINGER CAPITAL, INC., a Nevada corporation,

    Plaintiff-Counterdefendant- Appellant,

v.

LCA-CA I, LLC, a California limited liability company; MW WOODSIDE LAND, LLC, a Delaware limited liability company; and MW WOODSIDE, LLC, a Delaware limited liability company,

Boise, February 2023 Term

Opinion filed: May 17, 2023

Melanie Gagnepain, Clerk

|  |  |
|---|---|
| Defendants-Counterclaimants-<br>Respondents, | ) |
|  | ) |
|  | ) |
|  | ) |
| and, | ) |
|  | ) |
| TAUNTON PROPERTIES, LLC, a Minnesota<br>limited liability company; COMMERCIAL<br>NORTHWEST, LLC, an Idaho limited<br>liability company, dba Commercial Northwest<br>Property Management; BOTTOM LINE II,<br>LLC, an Idaho limited liability company, dba<br>KW Commercial; PACIFIC COMMERCIAL<br>REALTY - BOISE, LLC, an<br>Idaho limited liability company, | ) ) ) ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |
|  | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.   Patrick Miller, District Judge.

The decision of the district court is affirmed.

Kurtz Law, PLLC, Boise, for Appellant. John F. Kurtz, Jr., argued.

Givens Pursley, LLP, Boise, for Respondents LCA-CA I, LLC, MW Woodside Land, LLC, and MW Woodside, LLC. Thomas E. Dvorak argued on behalf of all Respondents.

Borton-Lakey Law & Policy, Meridian, for Respondents Taunton Properties, LLC.

Davison, Copple, Copple & Copple, Boise, for Respondent Bottom Line II, LLC.

Gordon & Rees Scully Mansukhani LLP, Boise, for Respondent Pacific Commercial Realty – Boise, LLC.

Powers Farley PC, Boise, for Respondent Commercial Northwest, LLC.

ZAHN, Justice.

This case involves a dispute concerning the purchase and sale of real property. Geringer Capital appeals the district court's order dismissing its complaint. The district court dismissed Geringer's claims after concluding Geringer's offer letter to purchase the real property was an unenforceable "agreement to agree" and was also unenforceable due to an insufficient property description. For the reasons stated below, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Taunton Properties, LLC owned 63 townhomes and 3.8 acres of adjacent land in Eagle, Idaho. In 2020, Commercial Northwest, Taunton's property manager and agent, provided Geringer with documents regarding the property. The documents identified the townhomes as "Woodside Villas," located at 1260 E. Lone Creek Drive, Eagle, Idaho 83616, and included financial statements and tenant information.

On August 7, 2020, Geringer sent a written offer ("Offer Letter") to Taunton Properties, proposing to purchase the 63 townhomes for $20,400,000 and an adjacent 3.8 acres for $1,000,000. The Offer Letter listed the property as: "The 63 Townhomes identified as Woodside Villas, 1260 E. Lone Creek Drive, Eagle, ID 83616, in addition to the approximately 3.8 acres of adjacent land." The Offer Letter identified the Seller only as "Title Holder." The Offer Letter also stated that, "Buyer and Seller agree to execute a more formal Agreement of Purchase and Sale within thirty (30) days containing market specific terms and the items set forth in this Agreement." The Offer Letter contained sections for "Title Insurance," "Proration's [sic] and Closing Costs," and "Seller's Deliveries," but stated those terms were "to be specified in the Agreement of Purchase and Sale." Peter Taunton, the manager of Taunton Properties, electronically signed the Offer Letter through DocuSign, which presumably returned it to Geringer.

On August 8, one day after signing and returning the Offer Letter, Taunton Properties received a different purchase offer from LCA-CA I, LLC ("LCA"), with a proposed sale price that was $400,000 more than Geringer's offer. That same day, Peter Taunton advised Geringer that Taunton Properties considered Geringer's Offer Letter unenforceable and that Taunton Properties would be selling the properties to LCA.

Geringer filed a complaint for specific performance, breach of contract, and breach of preliminary agreement against Taunton Properties. The complaint also alleged a claim for tortious

3

interference with contract against the remaining Respondents.[1] Geringer subsequently filed an amended complaint, which added a claim against the remaining Respondents for civil conspiracy. Respondents moved to dismiss Geringer's amended complaint pursuant to Idaho Rule of Civil Procedure ("I.R.C.P.") 12(b)(6), and argued that the Offer Letter was not an enforceable contract because it lacked material terms, including a sufficient property description.

The district court granted Respondents' motions to dismiss. The district court determined: (1) the Offer Letter lacked material terms and represented an agreement to agree; (2) the property description was insufficient under the statute of frauds; and (3) Geringer's claims for breach of preliminary agreement, tortious interference with contract, and civil conspiracy failed to state claims upon which relief could be granted. Geringer timely appealed the district court's dismissal of all of the claims minus its breach of preliminary agreement claim.

## II.    ISSUES ON APPEAL

1. Whether the district court erred when it dismissed Geringer's claims?
2. Whether the district court erred in awarding attorney fees to Taunton Properties?
3. Whether any of the parties are entitled to attorney fees on appeal?

## III.    STANDARD OF REVIEW

This Court reviews a district court's dismissal of a complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6) *de novo*. *Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 300, 520 P.3d 708, 712 (2022). "A motion to dismiss for failure to state a claim should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Luck v. Rohel*, 171 Idaho 51, 518 P.3d 350, 354 (2022) (quoting *Paslay v. A&B Irrigation Dist.*, 162 Idaho 866, 869, 406 P.3d 878, 881 (2017)). "Under Rule 12(b)(6), '[a]fter viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated.'" *Paslay*, 162 Idaho at 868–69, 406 P.3d at 880–81 (quoting *Losser v. Bradstreet*, 145 Idaho 670, 673, 183 P.3d 758, 761 (2008)).

This Court reviews a trial court's decision to award attorney fees and costs under an abuse of discretion standard. *In re Est. of Hirning*, 167 Idaho 669, 675, 475 P.3d 1191, 1197 (2020). To determine whether a trial court abused its discretion, we consider: "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its

---

[1] Commercial Northwest is Taunton Properties' property manager. Bottom Line II and Pacific Commercial Realty Advisors are Taunton Properties' selling agents.

discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* at 675–76, 475 P.3d at 1197–98 (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV. ANALYSIS

### A. The district court did not err when it dismissed Geringer's claims for specific performance and breach of contract.

The district court dismissed Geringer's claims against Taunton Properties for specific performance and breach of contract after concluding that the Offer Letter was unenforceable for two reasons. First, the district court concluded the letter was lacking material terms and therefore was an "agreement to agree." Second, the district court concluded that the property description was insufficient under the statute of frauds. We agree that the Offer Letter lacked a sufficient property description and affirm the district court's decision on that basis.

On appeal, Geringer argues that the essential terms of the agreement were sufficiently certain. Geringer also contends that Taunton Properties should be prevented from asserting the statute of frauds defense pursuant to what it acknowledges was dicta in *Tricore Investments, LLC v. Estate of Warren*, 168 Idaho 596, 613, 485 P.3d 92, 110 (2021) ("*Tricore*"). Finally, Geringer argues that the Offer Letter included a sufficient property description for purposes of the statute of frauds. Respondents maintain that the district court correctly determined that the Offer Letter lacked a sufficient property description.

An enforceable contract "must be complete, definite and certain in all of its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *P.O. Ventures, Inc. v. Loucks Fam. Irrevocable Tr.*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007) (quoting *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983)). Specifically, "[f]or a land sale contract to be specifically enforced, the contract must typically contain the minimum provisions of the parties involved, the subject matter thereof, the price or consideration, a description of the property, and all the essential terms of the agreement." *Id.* (citations omitted).

The statute of frauds applies to the conveyance of real property. *See Tricore*, 168 Idaho at 612, 485 P.3d at 108. Under the statute of frauds, "a description of real property must adequately describe the property such that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." *The David & Marvel Benton Tr. v. McCarty*, 161 Idaho 145, 151,

5

384 P.3d 392, 398 (2016) (quoting *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009)).

We decline Geringer's invitation to apply the *Tricore* dicta in this case. In *Tricore*, this Court determined that the statute of frauds was satisfied by the legal description in the parties' purchase and sale agreement. *Tricore*, 168 Idaho at 612, 485 P.3d at 108. However, before addressing the merits of the statute of frauds defense, the Court spoke to the availability of the defense in that case: "The purpose of the statute of frauds is to shield persons with interests in land from being deprived of those interests by perjury, not to arm contracting parties with a sword they may use to escape bargains they rue." *Id.* (quotation marks and citations omitted). Geringer contends that Taunton Properties is using the statute of frauds as a sword in this case and that we should prevent it from using the defense to avoid the contract in this case. We decline to do so.

The *Tricore* dicta is not precedent and we are not bound to follow it in this case. *City of Weippe for Use & Benefit of Les Schwab Tire Ctrs. of Idaho, Inc. v. Yarno*, 96 Idaho 319, 323, 528 P.2d 201, 205 (1974) (holding this Court is not bound by dicta from previous opinions). Moreover, this case is distinguishable from the facts in *Tricore*. There, Tricore entered into a formal purchase and sale agreement, which attached the legal descriptions of the property, but reserved 200 feet of waterfront (or two 100-foot parcels) for the sellers. *Tricore*, 168 Idaho at 607, 485 P.3d at 103. The parties operated under the purchase agreement for well over a year before the sellers asserted the agreement violated the statute of frauds because the property description did not specifically describe the reserved portion of waterfront. *Id.* at 607–09, 485 P.3d at 103–05. We ultimately held that the property description was sufficient to satisfy the statute of frauds. *Id.*

In this case, the Offer Letter does not include or refer to a legal description of the 63 townhomes and adjacent property. Additionally, the Offer Letter only lists the address of one of the 63 townhomes. The Offer Letter contains significantly less detail than the purchase and sale agreement in *Tricore*. Moreover, in this case, Taunton Properties raised the statute of frauds within one day of signing the agreement, so there was no delay in asserting the defense as there was in *Tricore*. Simply put, this case is distinguishable from the facts of *Tricore*.

1. *The Offer Letter's property description failed to satisfy the statute of frauds.*

Turning to the merits of this case, we agree with the district court that the property description in the Offer Letter fails to satisfy the statute of frauds. The purpose of the statute of frauds is to ensure the contract speaks for itself. *Allen v. Kitchen*, 16 Idaho 133, 145, 100 P. 1052,

1056 (1909). "It is not a question as to what the contract was intended to be, but, rather, was it consummated by being reduced to writing as prescribed by the statute of frauds." *Id.* "An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence." *Id.* at 136, 100 P. at 1055 (citation omitted). Specifically, a real estate contract satisfies the statute of frauds if the "quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." *City of Kellogg v. Mission Mountain Ints. Ltd., Co.*, 135 Idaho 239, 244, 16 P.3d 915, 920 (2000) (citing *Haney v. Molko*, 123 Idaho 132, 136, 844 P.2d 1382, 1386 (Ct. App. 1992)). To satisfy the statute of frauds a property description must "designate 'exactly' what property the seller is conveying to the buyer." *Ray*, 146 Idaho at 629–30, 200 P.3d at 1178–79 (citation omitted).

The Offer Letter in this case fails to designate exactly what is being conveyed and instead lists only a community name and physical address. The physical address does not indicate the metes and bounds of the real property and only pertains to one of the 63 townhomes at issue. There is no description for the remaining 62 townhomes or the 3.8 acres of adjacent land. While the Offer Letter refers to "Woodside Villas," the recorded plat (which is not mentioned in the Offer Letter but is referenced in the record on appeal) refers to "the Lonesome Dove Subdivision." As a result, the reference to "Woodside Villas" does not assist in identifying the property. Further, the property description does not reference any external documents to identify the property to be sold. The description thus fails to "designate exactly" the property to be sold. For these reasons, we affirm the district court's determination that the property description fails to satisfy the statute of frauds.

Geringer argues that the Court should "no longer apply the strict standard adopted in *Ray* requiring exactness and instead use the "reasonable certainty" standard. We recently rejected this argument in *616 Inc. v. Mae Properties, LLC*, 171 Idaho 610, 524 P.3d 889 (2023). There, we reaffirmed the standard in *Ray* and stated, "'reasonable certainty' is not enough. Instead, the writing must contain a property description that designates 'exactly' what property is being conveyed." *Id.* at 620, 524 P.3d at 899 (citations omitted). While we recognize that our decision in *616 Inc.* had not issued at the time Geringer filed its brief in this case, we see no reason to deviate from the *616 Inc.* holding in this case.

Next, Geringer relies on *City of Kellogg* to argue the property description in the Offer Letter satisfies the statute of frauds. In *City of Kellogg*, this Court determined the description, "the lodge and the land on which it is located, along with the ski lift" sufficiently described the property so it was possible to identify exactly what was being conveyed. 135 Idaho at 244–45, 16 P.3d at 920–21. The Court explained that the description clearly identified the property because "the quantity of land involved was only the amount directly underneath the lodge, and not some other, larger parcel within the ski resort area." *Id.* at 245, 16 P.3d at 921.

Here, Geringer argues that the townhomes act as landmarks, which can be used to define the conveyed property "exactly." However, in *City of Kellogg*, the conveyance only included the land directly underneath the landmarks. *See* 135 Idaho at 245, 16 P.3d at 921. Geringer's complaint seeks to compel the conveyance of all real property depicted in the subdivision plat—not just the land directly underneath the townhomes. Accordingly, the property description in the Offer Letter, even considering the use of landmarks, failed to describe exactly what property the Offer Letter intended to convey. *See McCarty*, 161 Idaho at 154, 384 P.3d at 401 ("identifying certain landmarks within a piece of property is not legally sufficient where the conveying document purports to convey more than that [sic] just those landmarks" (quoting *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 283, 92 P.3d 526, 533 (2004)). Therefore, *City of Kellogg* is distinguishable.

Geringer also contends that the district court could have determined the property to be conveyed by referencing external evidence. We also find this argument unpersuasive. "Idaho precedent is abundantly clear that extrinsic evidence is not permitted in order to determine the sufficiency of a property description in a document purporting to convey real property (unless that extrinsic evidence is specifically referenced in the document itself)." *McCarty*, 161 Idaho at 151, 384 P.3d at 398.

Here, the Offer Letter neither identifies a complete description of the quantity, identity or boundaries of the real property to be conveyed nor refers to extrinsic evidence that would provide a complete description. Geringer's contention regarding the language "63 Townhomes identified as Woodside Villas" fails because this language does not reference a recorded or external document containing a sufficient legal description of the property to be conveyed. As a result, this case is also distinguishable from *Tricore*.

8

Finally, Geringer argues that if the property description for either the townhomes or the real property is sufficient, then the district court should have only dismissed the claims relating to the property with the insufficient description. This argument is unpersuasive given our holding that both property descriptions are insufficient.

**B. The district court did not err when it dismissed Geringer's tortious interference with contract claims.**

The district court also determined that Geringer's tortious interference claim failed to state a claim upon which relief could be granted. The district court explained that the relevant Respondents could not have tortiously interfered with a contract because there was no enforceable contract.

Geringer argues that because the district court erred when it determined the Offer Letter was an unenforceable contract, the district court's dismissal of its tortious interference claim should also be reversed and vacated. Alternatively, Geringer argues that if the Court determines the Offer Letter is voidable under the statute of frauds, the Court should reverse the district court's dismissal because tortious interference claims can be based on voidable contracts.

Commercial Northwest argues that Geringer's distinction between void and voidable contracts is of no consequence because the Offer Letter is unenforceable "for being too vague, indefinite, and uncertain with respect to its essential terms." Therefore, Commercial Northwest contends that Geringer's tortious interference claim must fail. LCA and Pacific Commercial similarly argue that the district court's decision was correct.

"Tortious interference with contract has four elements: '(1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach.'" *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 64, 305 P.3d 499, 508 (2013) (quoting *Bybee v. Isaac*, 145 Idaho 251, 259, 178 P.3d 616, 624 (2008)). When considering the requirement of the existence of a contract, "[t]his Court has held that a claim for tortious interference with a contract is available when a contract is voidable or unenforceable but is not available when the contract is void ab initio." *Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 551, 314 P.3d 593, 606 (2013). The failure to satisfy the statute of frauds renders a contract voidable. *Id.* However, "[a] party cannot tortiously interfere with an agreement that is too vague and uncertain to be enforceable." *Id.*

In addition to concluding that the Offer Letter did not satisfy the statute of frauds, the district court concluded that the Offer Letter was too vague and uncertain to be enforceable because it was missing essential terms for "Title Insurance," "Prorations and Closing Costs," "Seller's Deliveries," "Earnest Money," "Due Diligence Contingency," and "market specific terms." The district court concluded that these terms were essential, but the Offer Letter indicated the terms would be provided in a future purchase and sale agreement. The district court also found additional terms to be material, yet unaddressed in the Offer Letter, including, "representations and warranties to be given by the parties (e.g., representations regarding the validity of tenant leases, the status of tenant rent payments, no property defects, turning over security deposits and prepaid rent, compliance with code requirements)." The district court concluded that the absence of specific provisions for these material terms rendered the Offer Letter a mere "agreement to agree."

Geringer contends that the district court erred in making these findings because the determination of whether contractual terms are material is a question of fact. Geringer argues that because the motion was made pursuant to I.R.C.P. 12(b)(6), the district court was limited to considering the evidence in the pleadings, none of which indicated that the parties considered the referenced terms to be material.

"A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Lawrence v. Jones*, 124 Idaho 748, 750–51, 864 P.2d 194, 196–97 (Ct. App. 1993) (quoting *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983)). The minimum requirements for a land sale contract include a description of the property. *See Tricore*, 168 Idaho at 615, 485 P.3d at 111 (citation omitted). If the agreement is "so vague, indefinite and uncertain that the intent of the parties cannot be ascertained," the agreement is unenforceable. *Silicon Int'l Ore, LLC*, 155 Idaho at 547, 314 P.3d at 602 (quoting *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 609 (2007)).

"When the trial court reaches the correct result by an erroneous theory, we will affirm the result on the correct theory." *Tricore*, 168 Idaho at 621, 485 P.3d at 117 (quoting *Nicholson v. Coeur d'Alene Placer Mining Corp.*, 161 Idaho 877, 881, 392 P.3d 1218, 1222 (2017)). Before the district court, Respondents argued the Offer Letter was unenforceable due to the vagueness and uncertainty of several material terms, one of which was the property description. The district court agreed the letter was unenforceable, but did not base its decision on the insufficiency of the

property description. Rather, the district court identified other terms that it found were material, but missing because the Offer Letter indicated they would be identified in a future purchase and sale agreement.

We need not address Geringer's argument that the district court erred in basing its decision on the other terms that it found to be material because we affirm the district court's decision on alternate grounds. This Court has consistently held that the property description is an essential element of a land sale contract. Our analysis above concerning the insufficiency of the Offer Letter's property description under the statute of frauds also establishes that the property description was so vague, indefinite, and uncertain that it rendered the contract unenforceable. *See P.O. Ventures, Inc.*, 144 Idaho at 238, 159 P.3d at 875. We therefore affirm the district court's decision that the agreement was unenforceable, albeit on a different ground than that cited in the district court's decision.

In sum, the district court did not err when it dismissed Geringer's specific performance and breach of contract claims against Taunton Properties because the Offer Letter failed to satisfy the statute of frauds and was so vague, uncertain, and indefinite that it was unenforceable. As a result, there was no enforceable contract with which to tortiously interfere. We therefore affirm the district court's decision dismissing Geringer's tortious interference claim.

**C. The district court did not err when it dismissed Geringer's civil conspiracy claim.**

Geringer argues that if this Court reversed the district court's dismissal of Geringer's tortious interference claim, then the Court should also reverse the district court's dismissal of Geringer's civil conspiracy claim.

"A civil conspiracy that gives rise to legal remedies exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *Tricore*, 168 Idaho at 625, 485 P.3d at 121 (quoting *McPheters v. Maile*, 138 Idaho 391, 395, 64 P.3d 317, 321 (2003)). "The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself." *McPheters*, 138 Idaho at 395, 64 P.3d at 321 (citation omitted).

The district court determined that because "no contract existed and therefore, no tortious interference could occur[,]" Geringer could not "establish the existence of a wrongful objective." The district court also explained that the amended complaint failed to "allege facts supporting the existence of unlawful means."

11

We find no error in the district court's conclusions. The only "civil wrongs" referenced in Geringer's complaint are the breach of contract and tortious interference with contract claims. Because we affirm the district court's dismissal of Geringer's breach of contract and tortious interference claims, there is no underlying civil wrong that could support a civil conspiracy claim. We affirm the district court's dismissal of Geringer's civil conspiracy claim.

**D. The district court did not err in awarding attorney fees.**

Geringer argues that if this Court reverses the district court's decision dismissing its complaint, this Court should vacate the district court's award of attorney fees because Taunton Properties would no longer be a prevailing party. Because we affirm the district court's decision, Taunton Properties remains the prevailing party. We therefore affirm the district court's order awarding attorney fees to Taunton Properties.

**E. We award Taunton Properties attorney fees on appeal.**

Taunton Properties requests attorney fees on appeal pursuant to Idaho Code section 12-120(3). "Idaho Code section 12-120(3) allows for an award of attorney fees to a prevailing party in a civil action to recover on any commercial transaction." *Buku Props., LLC v. Clark*, 153 Idaho 828, 836, 291 P.3d 1027, 1035 (2012). "The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." I.C. § 12-120(3). "In order for a transaction to be commercial, each party to the transaction must enter the transaction for a commercial purpose." *Simono v. House*, 160 Idaho 788, 792, 379 P.3d 1058, 1062 (2016) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012)). A commercial purpose exists when a "commercial transaction comprises the gravamen of the lawsuit." *Id.* (citation omitted). "To be the gravamen of a lawsuit, '(1) there must be a commercial transaction that is integral to the claim; and (2) the commercial transaction must be the basis upon which recovery is sought.'" *Id.* (quoting *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011)).

The facts set forth in the amended complaint establish that a commercial transaction is the gravamen of the claims between Geringer and Taunton Properties. The amended complaint describes each party as a business entity and alleges the existence of a contract to purchase 63 townhomes and associated real property for an amount exceeding $20 million. The amended complaint also references the exchange of information related to the townhome community, including tenant information, the rent cycle, and other financial information. The property details,

purchase price, and information exchanged indicate the purchase agreement was not for the "personal or household" use of Geringer, a business entity, but instead related to the purchase of townhomes that were used as rental properties and thus was a commercial transaction. We therefore award Taunton Properties its attorney fees on appeal pursuant to section 12-120(3).

LCA and Commercial Northwest request attorney fees pursuant to Idaho Code section 12-121. A court may award attorney fees under section 12-121 when the action "was brought, pursued or defended frivolously, unreasonably or without foundation." After reviewing the record in this case and the parties' arguments, we cannot conclude that Geringer brought this suit frivolously, unreasonably, or without foundation. Therefore, we deny LCA's and Commercial Northwest's requests for attorney fees.

## V.    CONCLUSION

We affirm the district court's orders dismissing Geringer's complaint and awarding Taunton attorney fees. We also award Taunton Properties attorney fees on appeal, but deny LCA's and Commercial Northwest's requests for attorney fees. All Respondents are awarded their costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER CONCUR.