IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47449

|  |  |
|---|---|
| In the Matter of the Estate of: <br> Eric Milo Hirning, Deceased. <br> ------------------------------------------------------ <br> CINDY LOUISE UZZLE, JOHN E. WHITE, and JODI HIRNING, <br><br>    Plaintiffs-Appellants, <br><br> v. <br><br> THE ESTATE OF ERIC MILO HIRNING, VICKI D. BERRYMAN, and RODNEY J. JACOBS, Co-Personal Representatives, <br><br>    Defendants-Respondents. | Boise, September 2020 Term <br><br> Opinion Filed: November 10, 2020 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Darren B. Simpson, District Judge. Scott H. Hansen, Magistrate Judge.

The decision of the district court is <u>affirmed</u> in part and <u>vacated</u> in part.

May, Rammell & Wells, Chtd., Pocatello, for Appellants. Kyle R. May argued.

Baker & Harris, Blackfoot, for Respondents. Dwight E. Baker argued.

_____

BURDICK, Chief Justice

This appeal arises out of the probate of Eric Milo Hirning's will ("the Will") and concerns a magistrate court's authority to conduct formal probate proceedings and approve an estate's final accounting and distribution. In an appeal from the Bingham County district court, acting in its appellate capacity, three beneficiaries of the Will, Cindy Louise Uzzle, John E. White, and Jody Hirning ("the Appellants"), challenge the procedural underpinnings of the district court's decision on appeal, the propriety of a magistrate court's order approving the estate's final accounting and proposed distribution, and the district court's award of attorney's fees. We affirm the decision of the district court in all respects except for its attorney's fees award.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

In February 2015, Mr. Hirning died testate leaving the residue of his estate to his children and stepchildren. At the time of his death, Mr. Hirning had three biological children—Vicki Dian Berryman, Jody Hirning, and Cindy Louise Uzzle—as well as one stepchild—John E. White—from his first marriage. In addition, Mr. Hirning shared a close personal relationship with his second wife's two children, Rodney Jacobs and Debi Sanders, considering them family for all practical purposes. The six children and stepchildren—Vicki, Jody, Cindy, John, Rodney, and Debi—are the sole beneficiaries of the Will.

Under the Will, one biological child, Vicki, and one stepchild, Rodney, were designated as co-personal representatives of Mr. Hirning's estate. The Will directed that Mr. Hirning's personal property be sold to any interested beneficiary or, if more than one beneficiary expressed interest, to be sold at a family auction to the highest bidder. Further, the Will provided for a potential specific bequest to Rodney, giving him the option to purchase Mr. Hirning's residence, a manufactured home[1] situated on approximately twelve acres in Bingham County, within one year of Mr. Hirning's death for $10,000 less than the fair market value. Rodney had the additional right to live in Mr. Hirning's home rent-free during that year.

1.    <u>The proceedings before the magistrate court.</u>

On March 10, 2015, Vicki and Rodney filed for an informal probate of the Will, seeking to have themselves appointed as co-personal representatives. The next day, the Appellants[2] retained independent counsel and filed a motion to remove Vicki as a personal representative and substitute Cindy in her stead. The Appellants claimed that Vicki had personal animosity toward the other beneficiaries and that her travel costs—she lived in Arizona—would be disproportionate to the modest value of Mr. Hirning's estate.

Faced with this motion, Vicki and Rodney decided to petition the magistrate court for a formal probate of the Will to resolve the disputes between them and the Appellants. Following a hearing on April 6, 2015 ("the April hearing"), the magistrate court denied the Appellants' motion and appointed Vicki and Rodney as co-personal representatives.

---

[1] The precise nature of the title to Mr. Hirning's residence is in dispute. However, under either the Estate's interpretation or the Appellants' interpretation, both parties agree that Mr. Hirning's home is a mobile or manufactured home.

[2] Debi Sanders has largely remained silent during the probate of Mr. Hirning's estate and has not taken a position in the dispute between the Estate and the Appellants.

For roughly the next year and a half, Vicki and Rodney (now acting on behalf of "the Estate") went about winding-up, including disposing of Mr. Hirning's remaining personal property[3] and home. In June 2015, the Estate conducted an auction of the remaining personal property. The Appellants had filed a motion to continue the auction the day before it was scheduled. However, this motion was not calendared for a hearing and the magistrate court never ruled on it. The Estate prepared a list of items sold at the auction, the winning bidder, and the amount of each winning bid.

In September 2015, Mr. Hirning's home was appraised for $72,500. Although Rodney intended to exercise his option to purchase the home for $62,500, he was ultimately unable to obtain financing within a year of Mr. Hirning's death and the other beneficiaries refused to grant an extension. Subsequently, the Estate listed Mr. Hirning's property for $72,500 in late March or early April 2016. Three offers were made on the property, two of which failed because the offerors could not obtain financing. The property finally sold to the third offeror for $50,000 cash in August 2016.

Finally, in January 2017, the Estate petitioned the magistrate court for an order approving its final accounting and proposed distribution. The Estate initially scheduled a hearing on its petition for early February, but that hearing was continued by stipulation of the parties to allow the Appellants time to review additional accounting information. Shortly after the continuance, the Appellants objected to the final accounting and requested additional information from the Estate. A few weeks later, the Estate provided additional documentation to the Appellants about Mr. Hirning's bank account and line of credit, the Estate's bank account, utility bills, rental and grazing fee receipts, and the co-personal representatives' fees and expenses. The Estate then scheduled a hearing on its petition for approval of the final accounting and proposed distribution for March 27, 2017 ("the March hearing").

Three days before the March hearing, the Appellants filed another motion to continue and requested additional accounting information. They did not calendar a hearing for this motion. At

---

[3] At some point prior to the petition for informal probate, the six beneficiaries agreed amongst themselves to depart from the terms of the Will and distribute certain sentimental or memento-type personal property in a random draw, round-robin style event and, in addition, allow members of the family who had given small items to Mr. Hirning during his life to reclaim those gifts. The hand-written records of the round-robin and the reclaimed gifts are part of the record in the Estate's final inventory.

3

the March hearing, however, the magistrate court heard the Appellants' concerns expressed in their motion to continue.

During the March hearing, the Estate presented the Appellants with more documentation and the magistrate court allowed a recess so that the Appellants could review and discuss the additional documents with the Estate's counsel. The Estate also filed its final inventory with the magistrate court. The magistrate court denied the Appellants' request for a continuance, explaining that it had wide authority under the Uniform Probate Code ("UPC") and the Trust and Estate Dispute Resolution Act ("TEDRA") to resolve the estate in a timely and efficient manner. The magistrate court noted that the administration of Mr. Hirning's estate had "some rough edges" but that those imperfections were not significant enough to require its intervention. Accordingly, the magistrate court granted the petition and approved the Estate's final accounting and proposed distribution. The Appellants retained a new attorney and timely appealed the magistrate court's order to the district court.

2. The proceedings before the district court.

After briefing, the district court heard oral argument on appeal on July 30, 2018. The Appellants challenged the Estate's closing, alleging that the inventory and accounting were incomplete and that the sale of Mr. Hirning's home was not commercially reasonable. Before issuing its decision on appeal, the district court determined that the magistrate court had not executed a final judgment that complied with Idaho Rule of Civil Procedure 54(a)(1). The district court subsequently stayed the appellate proceedings and remanded the matter to the magistrate court for it to draft a final judgment. The magistrate court then directed the Estate's counsel to draft the subsequent final judgment for submission to the district court. On November 19, 2018, the magistrate court entered its first final judgment ("Final Judgment I"). However, the district court found that Final Judgment I did not comply with Rule 54(a)(1) and issued another order staying the appeal and remanding the matter to the magistrate court.

On January 17, 2019, the magistrate court filed an amended final judgment ("Final Judgment II") which the district court rejected because it contained findings of fact and conclusions of law in direct contravention of Rule 54(a)(1). The district court again issued a stay and remand order.

4

Finally, on February 19, 2019, the magistrate court entered a second amended final judgment ("Final Judgment III") which the district court accepted. At that time, the district court took the matter under advisement.

Final Judgment I, Final Judgment II, and the district court's two orders to stay and remand that resulted in the creation of those documents, were never served on the Appellants' new counsel on appeal. Both Final Judgment I and Final Judgment II, however, were served personally on two of the Appellants and their previous attorney. Final Judgment III and the third stay and remand order were served on the Appellants' new counsel.

On April 19, 2019, the district court issued its Decision and Order on Appeal. The district court affirmed the magistrate court's order in nearly every respect, but remanded the matter to the magistrate court to make formal findings of fact and conclusions of law regarding the co-personal representative's fees and expenses. The district court did not award attorney's fees to either party on appeal.

Following the district court's decision, the Estate filed a petition for rehearing on the narrow issue of attorney's fees, arguing that the district court had mistakenly overlooked the portion of the Estate's brief where it requested fees. The district court agreed and, on rehearing, awarded the Estate attorney's fees under Idaho Code section 12-121, explaining, "[u]pon review of the record in this matter, this court is left with the firm belief that [the Appellants] brought this appeal frivolously, unreasonably, and without foundation."

The Appellants timely appealed, challenging the validity of the district court's decision based on the procedural missteps in service of Final Judgment II, the district court's affirmance of the magistrate's order, and the attorney's fees award under section 12-121.

## II. ISSUES ON APPEAL

1. Whether the appeal should be dismissed because the Appellants did not cite the correct standard of review.

2. Whether the district court's decision on appeal should be reversed because it cited a document which was mistakenly not served on the Appellants' counsel.

3. Whether the district court erred in concluding the issue of breach of fiduciary duty had not been preserved for appeal.

4. Whether the district court erred in affirming the magistrate court's acceptance of the Estate's inventory and order approving the final accounting.

5. Whether the district court erred in affirming the magistrate court's decision not to grant a continuance for additional testimony.

5

6. Whether the district court erred in affirming the magistrate court's conclusion that the home was reasonably sold.

7. Whether the district court erred in awarding the Estate attorney's fees on appeal pursuant to Idaho Code section 12-121.

8. Whether either party is entitled to attorney's fees on appeal under Idaho Code section 12-121.

### III. STANDARD OF REVIEW

When reviewing the decision of a district court acting in its appellate capacity, this Court "reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). If the district court affirmed the magistrate court's decision, and the magistrate court's findings are supported by substantial and competent evidence, this Court affirms the district court as a matter of procedure. *Id.* Importantly, "this Court does not review the decision of the magistrate court[,] . . . [r]ather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Id.* (quoting *Bailey*, 153 Idaho at 529, 284 P.3d at 973).

Whether a court erred by excluding witnesses is reviewed under an abuse of discretion standard. *State v. Cardell*, 132 Idaho 217, 219, 970 P.2d 10, 12 (1998). Similarly, "a trial court's decision to grant or deny a continuance will not be overturned unless the decision was an abuse of discretion." *Estate of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897, 422 P.3d 1101, 1103 (2018) (quoting *State v. Daly*, 161 Idaho 925, 927, 393 P.3d 585, 587 (2017)). Finally, a decision to award attorney's fees and costs is also reviewed using an abuse of discretion standard. *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016) (citation omitted). This Court uses a four-part standard in determining whether a trial court has abused its discretion. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). We ask "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.*

## IV. ANALYSIS

**A. The Appellants correctly cited the standard of review used by this Court in reviewing the decision of a district court acting in its appellate capacity.**

As an initial matter, we address the question of whether the Appellants cited the proper standard of review on appeal. The Estate argues that this appeal ought to be dismissed because the Appellants failed to lay out the standard of review this Court uses when reviewing the decision of a district court acting in its appellate capacity as articulated in *Losser v. Bradstreet*, 145 Idaho 670, 183 P.3d 758 (2008). The Estate is correct that this Court may dismiss an appeal if the appellant does not cite the appropriate standard of review. *See Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013). However, we will not dismiss this appeal on that basis because the Appellants cited the correct standard of review.

Instead of relying on *Losser*, the Appellants cite to *Nicholls v. Blaser*, for the appropriate standard of review—this Court is procedurally bound to affirm or reverse the decision of the district court, but reviews the magistrate court's record to determine whether its findings are supported by substantial and competent evidence and whether the conclusions of law follow therefrom. 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981). Although *Losser* is the more contemporary precedent, the rule we announced there was not a new standard; rather, it was a return to our previous decision in *Nicholls*. *See Losser*, 145 Idaho at 672, 183 P.3d at 760 (citing *Nicholls*, 102 Idaho at 561, 633 P.2d at 1139). As such, the Appellants' expression of the rule as articulated in *Nicholls* appropriately states the standard of review used by this Court when reviewing the decision of a district court acting in its appellate capacity.

**B. The errors in drafting and serving the final judgments are harmless.**

The Appellants argue that the district court improperly based its decision on Final Judgment II, which was not provided to them before it was filed with the district court. Their argument proceeds along three fronts: first, they argue that the district court should not have stayed the appeal from the magistrate court to request a final judgment; second, they argue that the magistrate court should not have allowed the Estate's counsel to draft the final judgments; and third, that the district court's decision was invalid because Final Judgment II should not have existed and, without it, the record from the March hearing is insufficient, requiring either a remand or a new trial under Idaho Rule of Civil Procedure 83(f)(3). We agree with the Appellants that there have been procedural errors in this case; however, we conclude that these errors are harmless.

7

Idaho Rule of Civil Procedure 83(a)(2)(F) provides that an appeal can be taken from a magistrate court to a district court following "any order, judgment or decree by a magistrate in a special proceeding for which an appeal is provided by statute." I.R.C.P. 83(a)(2)(F). Idaho Code section 17-201, in turn, lists the appealable judgments and orders from a probate proceeding. I.C. § 17-201. These appealable orders include, in relevant part, an order "[s]ettling an account of an executor, administrator or guardian" and an order "[r]efusing, allowing or directing the distribution . . . of an estate, or any part thereof, or the payment of a . . . distributive share." I.C. § 17-201(6)–(7). "Decisions by courts in these areas are subject to review regardless of whether they are final judgments." *In re Estate of McKee*, 153 Idaho 432, 437, 283 P.3d 749, 754 (2012) (quoting *In re Estate of Keeven*, 110 Idaho 452, 455, 716 P.2d 1224, 1227 (1986)).

On appeal from a magistrate court, the "district court must review the case on the record and determine the appeal in the same manner and on the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the Idaho Appellate Rules." I.R.C.P. 83(f)(1). Idaho Appellate Rule 13.3 allows an appellate court on its own accord to remand a case to a lower court at any time before an opinion is issued "to take further action as designated in the order of remand." I.A.R. 13.3(a).

Finally, at all stages in a proceeding "Idaho courts are to 'disregard all errors and defects that do not affect any party's substantial rights.'" *Matter of Doe*, 163 Idaho 565, 571, 416 P.3d 937, 943 (2018) (quoting I.R.C.P. 61). "Unless justice requires otherwise, no error . . . by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." I.R.C.P. 61. "Consequently, because an appellant can only prevail if the claimed error affected a substantial right, the appellant must present some argument that a substantial right was implicated." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). A right is substantial if it could affect the outcome of litigation. *Fonseca v. Corral Agric., Inc.*, 156 Idaho 142, 149, 321 P.3d 692, 699 (2014), *abrogated on other grounds by Sims v. Jacobson*, 157 Idaho 980, 342 P.3d 907 (2015).

Here, the Appellants are correct that multiple procedural errors occurred below; however, these errors are all harmless because the Appellants have not shown how their substantial rights were affected. To begin with a reference point, the district court cited to the substance of Final Judgment II only twice in its nearly forty-page Decision and Order on Appeal for the propositions that (1) the magistrate court concluded the Estate had provided an inventory to the Appellants, and

(2) the magistrate court found the inventory sufficient. And, notwithstanding Final Judgment II's contents, the record of the March hearing reflects that the magistrate court accepted and admitted the Estate's inventory. From this vantage point, we consider each of the Appellants' assignments of error in turn.

1. The district court was mistaken that a final judgment was necessary.

First, the district court did not need a final judgment in order to hear the appeal of the magistrate court's decision approving the final accounting and distribution. While the district court did act within its authority under I.A.R. 13.3 when it stayed the proceedings and remanded the matter for a final judgment, the district court was mistaken in its belief that a final judgment was necessary. Our holding in *McKee* indicates that an order from a magistrate court settling the account of an executor or approving in whole or in part the distribution of an estate is appealable under Idaho Code section 17-201 without a final judgment. *In re Estate of McKee*, 153 Idaho 432, 437, 283 P.3d 749, 754 (2012). Since the Appellants appealed from the magistrate court's order approving the final accounting and proposed distribution, a final judgment was not necessary for an appeal to the district court. Yet, the Appellants have not shown how this error affected their substantial rights. There is no indication that the Estate gained any litigation advantage from the stay and remand orders because both parties had already submitted their briefs and participated in oral argument. Further, the record of the March hearing demonstrates that the magistrate court accepted the Estate's inventory, so the district court did not need Final Judgment II to make such a finding. Since the Appellants' substantial rights were not affected, the error in staying and remanding for a final judgment is harmless.

2. It was not error for the magistrate court to allow the Estate to draft the final judgments.

The Appellants contend that it was improper and prejudicial for the magistrate court to allow the Estate's counsel to draft the final judgments. There is no case law or rule that prevents a court from ordering the prevailing party to prepare a proposed judgment or order so long as the court exercises independent judgment in reviewing and adopting the requested document as its own. *See, e.g.*, *Compton v. Gilmore*, 98 Idaho 190, 194–95, 560 P.2d 861, 865–66 (1977) (indicating that pro forma approval of party-drafted findings of fact and conclusions of law is disfavored but a court may ask for proposed findings and conclusions to assist its decision-making); *see also Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 375, 816 P.2d 326, 331 (1991) (applying the same principle to other orders requested by a court). Here, there is no

9

argument or factual basis in the record that would allow us to conclude that the magistrate court did not exercise independent judgment in reviewing and adopting the final judgments drafted by the Estate. Further, even if the magistrate court did err in ordering the Estate's counsel to prepare the final judgment, the Appellants have not demonstrated how their substantial rights were affected, so any resulting error is harmless.

     3.   <u>The record on appeal to the district court was sufficient even without Final Judgment II.</u>

Finally, we find the Appellants' argument—that without Final Judgment II the record before the district court was insufficient for review—unavailing. The Appellants have taken inconsistent positions. On one hand, they never argued in their briefing or during oral argument before the district court that the record was insufficient for appellate review. Yet, on the other hand, they now argue before this Court that the record was insufficient for appellate review without Final Judgment II, which was filed *after* briefing and oral argument before the district court. Notwithstanding this inconsistency, we conclude that the record before the district court, with or without Final Judgment II, was sufficient.

To the extent the district court relied on Final Judgment II for its finding that the magistrate court accepted the Estate's inventory and the inventory was provided to the Appellants, this information was already apparent from the record of the March hearing. During that hearing, the Estate sought to admit its full inventory on the record with the district court and the district court did so, indicating that the inventory was acceptable to the court. What's more, the very act of filing the inventory with the court is one of the statutorily prescribed methods of providing an inventory. *See* I.C. § 15-3-706. So, in short, the record of the March hearing demonstrates both that the inventory was provided to the Appellants and that the magistrate court found it acceptable. Thus, to the degree Final Judgment II merely reflects the record before this Court, the district court's minimal citation to that judgment did not prejudice the Appellants.

In sum, we conclude that the errors in drafting and serving the final judgments are harmless. The Appellants failed to demonstrate how the errors in service could have impacted the outcome of the litigation as Final Judgment II merely echoed what was already on the record from the March hearing. Accordingly, since the district court had adequate information upon which to base its ruling irrespective of Final Judgment II, any errors with respect to that judgment are harmless.

10

**C. The district court properly concluded that the issue of breach of fiduciary duty had not been preserved for appeal.**

Throughout their briefing, the Appellants contend that the co-personal representatives breached the fiduciary duties owed to them: first, by not filing a timely inventory; second, by not providing a proper accounting; and third, by not selling Mr. Hirning's home for a higher price. Although the issue of breach of fiduciary duty is interwoven into many of the Appellants' arguments, we address this issue separately because we affirm the district court's ruling that it has not been preserved on appeal.

"This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Ada Cnty. Hwy. Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008) (citing *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995)). This is true "[e]ven though an issue was argued to the court, [in order] to preserve an issue for appeal there must be a ruling by the court." *Krinitt v. Idaho Dep't of Fish & Game*, 159 Idaho 125, 131, 357 P.3d 850, 856 (2015) (quoting *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009)).

The words "fiduciary" or "fiduciaries" appear only five times in the transcripts of the April and March hearings. The first mention of fiduciary duties is from the magistrate court, which reminded the Appellants that the personal representatives were subject to fiduciary duties and the Appellants had a right to hold the Estate accountable by filing a motion with the court if they believed those duties had been breached. Specifically the magistrate court stated:

> So for the time being, we're going to go forward with the personal representatives as indicated, and if you folks want to work together and cooperate—you certainly all have a right to look over Vicki's shoulder. She's got what's called a fiduciary duty, which means, if you think she cheats or if she lies or she doesn't do something fair or right, you've got a right to call her on it and file something in court and say "Hey. Wait a minute. She is not acting in the best interests of everybody that's involved" . . .
>  And so you can call her on that, and she's got a responsibility and so does Rodney—have that responsibility.
> But, at this point we don't disqualify them just because we don't like them or just because they say nasty things in the hallway or because they've said things seven years ago that we don't like.

Subsequently, in the nearly year-and-a-half between the magistrate court's reminder that the Appellants had a right to enforce the personal representatives' fiduciary obligations and the

Estate's request for approval of the final accounting and proposed distribution, the issue was not raised or filed in any pleading before the magistrate court. This includes the period during which the conduct the Appellants point to on appeal as a breach of the co-personal representatives' fiduciary duties allegedly occurred: the sale of the home, the family auction, preparing an inventory, and preparing an accounting.

Finally, at the March hearing the Appellants' counsel briefly mentioned the issue of breach of fiduciary duty. However, the Appellants' counsel failed to secure any adverse ruling on the issue which could form the basis of an appeal, despite the magistrate court pleading with the Appellants' counsel to squarely present his objections. For example, this exchange near the beginning of the March hearing encapsulates the lack of clarity in the Appellants' arguments to the magistrate court below:

> MR. BLASER [for the Appellants]: I think we should be allowed to go in there because some of the things that – the information we've gathered and things that have transpired.
>
> THE COURT: Like what? . . . . I notice in the file that you filed an objection to try to continue [the auction]. So is that what you're getting at, or what's the problem?
>
> MR. BLASER: . . . . And this whole thing as far as the administration of the estate has been defiant to the other heirs, and I think that ties in with some of the things that we're going to get into.
>
> THE COURT: Well, you can help me so that I can listen for these things. Why don't you tell me what it is you're going to try to find out and accomplish in this hearing so that, at the end of the day, when I have to make a decision, I'll have some idea of what I'm trying to rule on?
> What are the concerns that you have? Are they the concerns that are listed in your motion to continue and request for more information, or what is it you're trying to accomplish here? Help me out here.
>
> MR. BLASER: Well, we'd ask for – we filed an objection and asked for information. And then we got some of it, but we didn't get it all furnished. And so we wanted more information so we could formulate – once we had the information reviewed, then we could formulate, if necessary, more objections.

Following this exchange, the Appellants failed to clarify their intentions with respect to any allegation of breach of fiduciary duty. For instance, in the context of what objections they planned to raise in the future, they stated generally that "we feel that there's probably been a breach of fiduciary duties." Next, in response to an objection from the Estate's counsel that a line of questioning was outside the scope of the March hearing, the Appellants' counsel responded, in part, by saying, "[w]ell, I think there's a couple of things that we need—we've got several statutes,

12

a conflict of interest, breach of fiduciary duty, things like that." In addition, the Appellants added that they *may* want to raise the issue of breach of fiduciary duty with respect to whether the personal representatives were entitled to be compensated for their services. Finally, in his closing remarks, the Appellants' counsel made a general allegation that "it's just been an extremely difficult situation, and I think there's been a breach of fiduciary duties. And they have not followed the procedures like they should have." Despite their generic argument that fiduciary duties had been breached, the Appellants never cited specific examples or directly asked the magistrate court to rule on the issue.

On these facts, the district court found that the issue of breach of fiduciary duty had not been properly preserved for appeal and did not consider it. On appeal to this Court, the Appellants point to the district court's conclusion that the magistrate court did not "hear[] substantive breaches of the co-personal representatives' fiduciary duties" and "[i]nstead [the magistrate court] discerned that [the Appellants] were nitpicking about the way Vicki and Rodney handled the Estate" as evidence that the issue of breach of fiduciary duties had been raised in the proceedings below. However, read in context, this sentence indicates the district court was not making a formal finding that the magistrate court ruled on the issue of breach of fiduciary duty; rather, the sentence is best understood as an analysis of the magistrate court's decision-making process with respect to excluding additional witnesses. The district court found that the magistrate court did not err because it did not think that additional witnesses would be helpful in deciding any matter currently before it. In other words, because the Appellants had not properly raised nor supported a breach of fiduciary duty by pleading, proper argument, or factual presentation, there was no need to allow further witnesses. This determination was a proper exercise of the magistrate's discretion.

In addition, the Appellants point out Final Judgment II, which the district court rejected, included a finding that the co-personal representatives had not breached their fiduciary duties. However, the district court struck all the paragraphs in Final Judgment II that contained any findings of fact or conclusions of law, including the paragraphs mentioning breach of fiduciary duty.

To summarize, the Appellants have not preserved the issue of breach of fiduciary duty on appeal because they failed to secure an adverse ruling on the issue below. The Appellants never asked the magistrate court to decide the issue, despite the court pleading with them to make a clear argument. If the Appellants wished to raise the issue of breach of fiduciary duty below they could

13

have done so, or they could have filed an independent action for breach of fiduciary duty against the co-personal representatives. The Appellants did neither. Consequently, this Court will not consider the issue on appeal.

**D. The district court did not err in affirming the magistrate court's acceptance of the final inventory and approval of the final accounting.**

The Appellants argue the Estate did not provide a timely or complete inventory pursuant to Idaho Code section 15-3-706, and the magistrate court improperly approved the Estate's final accounting instead of compelling further accounting under Idaho Code section 15-3-1001. On intermediate appeal, the district court affirmed, concluding the magistrate court was within its discretion to approve the final accounting and to accept the Estate's inventory. We affirm the district court.

1. The district court applied the appropriate standard of review.

The Appellants initially argue that the district court improperly used an abuse of discretion standard of review when evaluating the magistrate court's decision to approve the Estate's final accounting and inventory. We conclude otherwise because the district court appropriately recognized the issues involved the magistrate court's discretion and properly held that the magistrate court did not abuse that discretion.

"One of the express purposes of the [Uniform Probate Code] is to promote the speedy and efficient liquidation and distribution of estates, and its provisions are to be liberally construed and applied in order to achieve that end." *In re Estate of Kunzler*, 108 Idaho 374, 377, 699 P.2d 1388, 1391 (1985) (citing I.C. § 15-1-102). Under the UPC, "the court handling a probate . . . [has] wide ranging powers to determine contested matters[.]" *Miller v. Estate of Prater*, 141 Idaho 208, 213, 108 P.3d 355, 360 (2005).

Through this lens, two relevant provisions of the UPC apply to the Appellants' arguments: Idaho Code sections 15-3-706 and 15-3-1001. Idaho Code section 15-3-706 provides that "[w]ithin three (3) months after his appointment, a personal representative . . . shall prepare an inventory of property owned by the decedent at the time of his death." Section 15-3-706 continues by providing two mechanisms by which a personal representative can supply the required inventory. *See* I.C. § 15-3-706. A personal representative "shall send a copy of the inventory to interested persons who request it, and he may file the original of the inventory with the court." *Id.* The comment to this section of the UPC indicates that "the Court's role in respect to the second alternative is simply to receive and file the inventory with the file relating to the estate." *Id.* cmt.

14

Next, Idaho Code section 15-3-1001(a) provides that "a personal representative or any interested person may petition for an order . . . to consider the final account or compel or approve an accounting and distribution." I.C. § 15-3-1001(a). Further, after notice and a hearing, "the court *may* enter an order or orders, on appropriate conditions, determining the persons entitled to distribution of the estate, and, as circumstances require, approving settlement." *Id.* (emphasis added).

Both the district court and the magistrate court recognized that approving the final accounting and distribution was a discretionary matter. The magistrate court faced a choice at the March hearing: either enter an order compelling further accounting from the Estate or enter an order approving the Estate's accounting and proposed distribution. It chose the latter. Further, although the Appellants never clearly asked the magistrate court to exclude the Estate's final inventory, accepting this inventory as part of the record also falls under the magistrate court's discretion to determine contested matters and resolve estates in a speedy and efficient manner. As such, we find that the district court did not err in applying an abuse of discretion standard to the magistrate court's decision to approve of the Estate's final accounting and accept the Estate's inventory.

2. <u>The district court did not err in upholding the magistrate court's approval of the final accounting and acceptance of the Estate's inventory.</u>

As to the merits, the Appellants argue that the Estate has an absolute responsibility under the UPC to provide a complete inventory and accounting. Without a complete inventory and accounting, they contend, the magistrate court could not close the estate. To support this, the Appellants point to Idaho Code sections 15-3-706, -3-1001, -3-708, -3-712, -7-302, and -7-303[4] for the notion that an estate may not be closed until a full accounting is completed. As a consequence, the Appellants claim that the district court erred in affirming the magistrate court because the Estate neither provided a complete inventory nor a full accounting.

In contrast, the district court found substantial and competent evidence in the record to support the magistrate court's conclusion that the Estate's accounting and inventory complied with the UPC's requirements. We agree with the district court and address the inventory and accounting issues in sequence.

---

[4] Sections 15-7-302 and -303 concern the fiduciary duties trustees owe to the beneficiaries of a trust and, accordingly, are irrelevant to the disposition of this probate matter.

15

*i.* *The district court did not err in affirming the magistrate court's acceptance of the Estate's inventory.*

The Appellants argue the Estate breached its fiduciary duties to them by providing the inventory late and also that the Estate did not provide a complete inventory. As discussed above, the timing of the inventory is couched in terms of a breach of fiduciary duty, which has not been preserved on appeal and will not be considered by this Court. This leaves the sufficiency of the inventory as the remaining issue.

Under Idaho Code section 15-3-706, a personal representative has a duty to "prepare an inventory of property owned by the decedent at the time of his death, listing it with *reasonable detail*, and indicating as to each listed item, its fair market value as of the date of decedent's death." I.C. § 15-3-706 (emphasis added). In addition, "if any property not included in the original inventory comes to the knowledge of a personal representative . . . he shall make a supplementary inventory or appraisement showing the market value as of the date of decedent's death . . . ." I.C. § 15-3-708.[5] After the personal representative prepares an inventory, she "shall send a copy of the inventory to interested persons who request it, and . . . may file the original of the inventory with the court." I.C. § 15-3-706.

In this case, the district court concluded that the Estate did not provide an inventory to the Appellants within three months of the appointment of the co-personal representatives, but the magistrate court's conclusion that the inventory was reasonable was supported by substantial and competent evidence. The district court discussed at length the evidence presented to the magistrate court including "signed agreements (by all of the devisees) as to certain items given to third parties, lists of gifts to [Mr. Hirning] which were returned to each devisee, a 3-page hand-written list of items given to devisees, and a 12-page typed list of the items sold to each devisee at the family auction."

The Appellants counter by noting that items such as "some other furniture," "some end tables," "some chairs," possibly a freezer, "some steel cabinets," and "a couple of handcarts," had not been listed for sale at the family auction. Also, the magistrate court heard testimony from the

---

[5] In addition, the Comment to the UPC indicates that the appropriate remedy for an interested party that has been wronged by a personal representative's failure to provide a proper inventory under this section is to either seek to remove the personal representative or to attempt to recover damages for losses caused the inventory deficiencies. *See* I.C. § 15-3-706 cmt. Neither remedy was pursued here.

Appellants that an inoperable 1968 Ford pickup truck without a bed had been removed from Mr. Hirning's property without being listed on any inventory.

In contrast, the magistrate court heard testimony from the Estate that all beneficiaries were advised they could supplement the auction list with any item they wanted to add. In addition, the Estate offered testimony that one of the Appellants was "given anything and everything he wanted" from the items that remained on Mr. Hirning's property after the auction including the handcarts which were "not operable." As to the inoperable Ford truck, the Estate claims that the co-personal representatives took pictures of the vehicle identification numbers for every vehicle on Mr. Hirning's property to obtain title information. Shortly thereafter, the Estate found titles in Mr. Hirning's house to all but one of the vehicles on the property. To the personal representatives' recollection, there was never a 1968 Ford pickup on the property and no such vehicle was titled in Mr. Hirning's name. The Appellants did not produce any independent documentation to verify that Mr. Hirning had title to an older-model Ford truck as described.

On these facts, the district court determined that the magistrate court did not err by accepting the Estate's inventory at the March hearing. The district court noted the Appellants had made no offer of proof as to the items they claimed had been left off the auction list and, in any event, the Appellants were aware they could place any item they wished on the list. Accordingly, the district court found substantial and competent evidence on the record to support the conclusion that the inventory listed property with reasonable detail. We conclude that substantial and competent evidence supports the magistrate court's findings and thus affirm the district court's decision on this issue.

> ii.    *The district court did not err in affirming the magistrate court's approval of the Estate's final accounting.*

The district court affirmed the magistrate court's decision to approve the Estate's final accounting based on substantial and competent evidence in the record that demonstrated the accounting provided by the Estate was as complete as it could be and no further accounting would be necessary or helpful.

Under the UPC, a "personal representative or any interested person" may file a petition seeking the court "to consider the final account or compel or approve an accounting and distribution[.]" I.C. § 15-3-1001. In considering such a petition, "the court may enter an order or orders, on appropriate conditions, determining the persons entitled to distribution of the estate, and, as circumstances require, approving settlement and directing or approving distribution of the

17

estate and discharging the personal representative from further claim or demand of any interested person." *Id.* Viewed in light of the magistrate court's broad power to conduct probate proceedings under the UPC, the speed and efficiency of the proceedings are appropriate circumstances to consider when ruling on a motion to either compel further accounting or approve the accounting which has been provided. *See* I.C. § 15-1-102.

We find substantial and competent evidence in the record to support the findings and conclusions of the magistrate court and, accordingly, affirm the district court's decision. In so doing, we recognize the core goals of the UPC are to provide for a consistent and effective system to liquidate a decedent's estate and maximize the benefit that flows to the devisees of a will. *Id.* The provisions of the UPC are to be construed and applied liberally to promote these core policies, I.C. § 15-1-102(a), and where perfection is at odds with finality (as is the case here), it is up to the sound discretion of the magistrate court to strike the appropriate balance between further accounting and a final distribution. This is not to say that the personal representatives of small estates do not need to behave as scrupulously as those of large estates; they are still subject to the same set of fiduciary duties and responsible for losses that flow from breaching those duties. *See* I.C. § 15-3-712. Yet, where the costs of a perfect accounting are disproportionate to the value of the estate, it is economically reasonable that some stones may be left unturned in the interest of fulfilling the testator's intent that the estate flow to the beneficiaries and not to lawyers and administrators.

Here, the Estate filed a petition for the magistrate court to approve the final accounting and distribution on January 17, 2017, almost two years after formal probate proceedings began. From June 18, 2015, when the family auction was held, until January 17, 2017, no filings were made in the matter challenging the propriety of any of the Estate's actions. The hearing on the final account and distribution was scheduled for February 6, 2017, but continued by stipulation of the parties.

On that date, the Appellants filed an objection to the final accounting and requested the following information: (1) an explanation of the balance in Mr. Hirning's Key Bank account; (2) detailed information about any rent paid to the estate for the use of Mr. Hirning's home; (3) explanations of disbursements made for Idaho Power bills, bank account fees, interest on a Key Bank line of credit, and personal representative charges; (4) information on any grazing fees paid to the estate; and (5) information about the terms of the agreement to rent Mr. Hirning's home to

18

Charlie Bair. On March 6, the Estate responded with the following information: (1) copies of Key Bank statements showing the balance of Mr. Hirning's account ten days before his death; (2) copies of the Estate's bank account statements showing deposits for rent and grazing fees; (3) details relating to the terms of the agreement allowing Mr. Bair to reside at Mr. Hirning's home; (4) copies of Idaho Power Bills from May 2015 to November 2015, (5) Key Bank documents reflecting money due and the amount paid on a line of credit, and (5) a detailed statement of the personal representatives hours and fees.

Following this disclosure, the Estate scheduled a hearing on the final accounting and distribution for March 27, 2017. Subsequently, on March 24, the Appellants again moved the magistrate court for a continuance of the March 27 hearing and for more detailed information. This time, the Appellants asked for (1) all Key Bank statements from Mr. Hirning's account from the time of his death until the account was closed; (2) all Key Bank line of credit statements from the time of Mr. Hirning's death until the line of credit was paid off; (3) all bank statements from the Estate's bank account; (4) an accounting for a wood burning stove and an invoice from S & L Enterprises; (5) the closing statement from the sale of the home and appraisal documents; (6) all tax returns filed and refunds received after Mr. Hirning's death; and (7) another detailed statement of the personal representatives' fees. The Appellants did not schedule a hearing on this motion and the March 27 hearing went forward as scheduled.

At the hearing, the Estate provided the Appellants with a copy of the closing statements on the home, Mr. Hirning's final tax return, and a detailed itemization of the personal representatives' fees. In addition, the Estate's counsel indicated he could provide a complete record of the Estate's bank account at Washington Federal and he had provided all Key Bank records which the bank had been able to provide the Estate but the Appellants had "permission to obtain whatever records are available." The magistrate court then gave the parties approximately an hour to review the documents and discuss how they would like to proceed. After this conference, the parties were unable to resolve their differences and proceeded with the hearing.

On these facts, the magistrate court chose to approve the final accounting and order the final distribution rather than delay the proceedings. The magistrate court noted the Appellants had made no effort to independently obtain account records, depose either of the personal representatives, or otherwise provide evidence that the accounting provided was flawed. Further, the magistrate court indicated the Appellants continued requests for more information amounted

19

to "nitpicking" and "there was a lot of discovery going on . . . at trial[.]" Indeed, the magistrate court noted the proceedings had gone on for two years, the cost of the hearing would amount to almost 10% of the Estate's value, and there had been "several instances of delay and trying to slow this down" by the Appellants. The magistrate court also expressed skepticism that, if given the additional information requested, the Appellants would be able to discover any significant losses caused by the Estate's management. Based on this, the magistrate court chose to approve of the Estate's final accounting despite some "rough edges" because the costs in both time and money to the estate (and, as a result, to the beneficiaries of the Will) would be disproportionate to any benefit from the Appellants' request for even more accounting information. The magistrate court had substantial and competent evidence before it to find that a further accounting was not necessary and the conclusion to approve the final accounting flowed from that evidence. The district court affirmed. We now affirm the district court.

### E. The district court did not err in affirming the magistrate court's decision not to grant a continuance for additional testimony.

On appeal to this Court, the Appellants assert that the magistrate court erred by not allowing them to call the following witnesses: Mark Call, the real estate agent responsible for the sale of Mr. Hirning's home; Charlie Bair, the purchaser of Mr. Hirning's home; and Steve Saxton, the auctioneer at the family auction. Whether this issue is characterized as a decision not to grant a continuance or a decision to exclude additional witnesses, the key questions are whether the Appellants made their intent to call these witnesses known to the magistrate court and whether these witnesses were necessary.

The Appellants predicate their requests for additional witnesses on a few vague exchanges that occurred at the March hearing. For example, near the end of the hearing the following exchange occurred:

> THE COURT: Mr. Baker, what would you like to do next?
>
> MR. BAKER [for the Estate]: Your Honor, I don't have anything further in the way of testimony. There are a couple of issues I'd like to just address so we all understand where we're going.
>
> THE COURT: Okay. Well, we're down to 3:20; so what I'm going to do is I'll give each of you five minutes at this point.
>
> . . . .
>
> MR. BAKER: Well, the first thing, Your Honor, is are we going to have additional testimony from either Mr. Mark Call or –
>
> MR. BLASER [for the Appellants]: Charlie Bair. Charlie Bair.

20

THE COURT: Charlie Bair.

MR. BAKER: Charlie. Oh, yeah. Mr. Bair – Mr. Bair or Mr. Call?

THE COURT: Do you gentlemen feel that's necessary?

MR. BAKER: I don't necessarily. I think the testimony is here. Obviously, we could flesh some of that out further, but I think the Court can get the sense as to what happened.

THE COURT: Mr. Blaser?

MR. BLASER: I think it would be good to have Mark here to clarify something.

The only other indication the Appellants' counsel gave to the magistrate court about additional witness testimony is when, at the beginning of his closing argument, he remarked, "Well, first, we would like to call an additional witness. I understand the Court's not going to allow that."

From this record, it is impossible to discern who the Appellants wished to call or even why. The Appellants did note that "it would be good to have Mark [Call] here to clarify something." And, when the Estate's counsel asked the magistrate court if additional testimony was necessary, the Appellants volunteered Mr. Bair's name as a potential additional witness. As to Mr. Saxton, the Appellants did not request him by name as an additional witness. Without an offer of proof from Appellants as to why an additional witness was necessary, what that witness would testify to, and who that witness was, this Court will not consider whether the magistrate court abused its discretion by refusing additional testimony. *See Clair v. Clair*, 153 Idaho 278, 289, 281 P.3d 115, 126 (2012) ("[A]bsent an offer of proof, the claim of error, based on the exclusion of evidence by a trial court cannot be preserved on appeal."). The district court reached the same conclusion, stating that the Appellants failed to offer proof as to the expected testimony from either Mr. Call or Mr. Bair and thus could not show the magistrate court abused its discretion by refusing to allow additional time for testimony when it had nothing before it to demonstrate what that testimony would show. Substantial and competent evidence supports the magistrate court's findings and its conclusion not to delay the proceedings for additional testimony follows therefrom. Therefore, we affirm the district court's decision affirming the ruling of the magistrate court.

**F. The district court did not err in affirming the magistrate court's conclusion that the sale of real property was reasonable.**

On appeal, the Appellants make four arguments as to why the district court erred in affirming the magistrate court's determination that the sale of Mr. Hirning's real property was reasonable. First, they argue that because the magistrate court did not make findings of fact and

conclusions of law on the issue the record was not sufficient for review. Second, they argue that the magistrate court required additional unlawful procedures for them to challenge the sale. Third, they argue that the home sold for less than its appraised value. And fourth, they argue that the home should have sold for more than it had if the co-personal representatives changed the title of the property. The Estate counters that the Appellants have not offered any evidence to show that the sale was commercially unreasonable and the facts in the record demonstrate that the magistrate court had substantial and competent evidence to conclude the sale was reasonable. We affirm the decision of the district court because there is substantial and competent evidence in the record to support the magistrate court's findings and conclusion that Mr. Hirning's home was sold reasonably.

Initially, as discussed above, the Appellants have taken an inconsistent position with respect to the sufficiency of the record. The Appellants' briefing and argument on appeal to the district court did not challenge the sufficiency of the record with respect to the home's sale. Yet, the Appellants now challenge that record before this Court. We find the record on appeal is sufficient for review: the magistrate court made oral findings of fact and conclusions of law concerning the sale of the home on the record during the March hearing. The magistrate court approved the final accounting and proposed distribution, which included proceeds from the sale of the home and indicated its reasoning for concluding that the sale of the home was conducted reasonably.

Next, the Appellants have misread and misconstrued the magistrate court's reasoning by erroneously concluding the magistrate court imposed unlawful procedural requirements on them. When the magistrate court discussed why it rejected the Appellants' arguments with respect to the sale of the home, it provided a list of steps the Appellants *could have* taken to contest the sale of the home, but nowhere did it say that these steps were procedural requirements. The magistrate court indicated that the Appellants could have filed a motion to set aside the sale of the home, filed a bond for the amount of the appraised value of the home while they disputed the sale to Mr. Bair, tendered the appraised value of the home to the Estate, or provided expert witness testimony as to the value of the home. In short, the magistrate court was not imposing any unwarranted or unlawful procedural requirements on the Appellants; rather, it merely listed ways the Appellants could have properly brought the matter to the court in order for it to address the issue.

In addition, while it is true that the home did sell for a price below its appraised value, the Appellants offer nothing to demonstrate why this was inherently unreasonable. The evidence presented to the magistrate court showed that Rodney had an option to purchase the home for $10,000 less than the fair market value within one year of Mr. Hirning's death. When Rodney was unable to procure financing to purchase the home within one year, he sought an extension which the Appellants rejected. Subsequently the Estate listed the home for sale with Mr. Call after consulting with three different real estate agents. Ultimately, three offers were made on the home and all but one fell through because financing could not be obtained. However, Mr. Bair had made a cash offer on the home for $50,000 immediately after it was listed. Nearly eighteen months after Mr. Hirning's death, the Estate approached Mr. Bair again to see if he was still interested in the property for $50,000 cash. At this point, it was not clear that Mr. Bair was still interested in the home, but he eventually agreed to purchase it for $50,000 cash. The Estate thought that this offer may be under value, but based its decision to sell on the previous offers that had fallen through, the slower real estate market in the winter, and the desire to settle the estate in a reasonable amount of time.

In response, the Appellants offered some testimony that at least one offer on the home fell through because the prospective buyer could not obtain an FHA loan based on the status of the property. The Appellants contend that banks would not loan money for a manufactured home unless it was listed as real property. The argument suggests that had the Estate had taken steps to change the status of the property in some fashion, it could have sold the home for a higher amount. The Appellants did not offer any admissible evidence to prove the personal representatives had any legal ability to alter the status of the property as argued by the Appellants. In contrast, there is testimony from one personal representative that the property was already considered listed as real property and that the Appellants had actually requested the manufactured home be removed so that the sale could be financed as exclusively one for real property, which the Estate was not willing to consider.

Based on this evidence, the magistrate court concluded that the home was sold reasonably. This is supported by evidence that the Appellants took almost no concrete steps to oppose the sale until the March hearing, there was no admissible evidence as to the reasonable sale value of the home, and the Estate did not appear to have any remaining viable offers for the property outside

23

of Mr. Bair. The district court found that magistrate court's decision was supported by substantial and competent evidence. We affirm the district court.

### G. The district court erred in awarding attorney's fees on appeal under Idaho Code section 12-121.

"In order to be awarded attorney's fees, a party must actually assert the specific statute or common law rule on which the award is based; the district judge cannot sua sponte make the award or grant fees pursuant to a party's general request." *Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999). "The mere citation of Idaho Code § 12-121, even by a respondent, without providing any argument," is inadequate to justify an award of attorney's fees on appeal. *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010). A decision to award attorney's fees and costs is reviewed according to an abuse of discretion standard. *Ballard v. Kerr*, 160 Idaho 674, 716, 378 P.3d 464, 506 (2016).

In its Decision on Appeal, the district court declined to award either party attorney's fees. The district court denied the Estate's request for fees because it did not believe the Estate cited a statutory basis for an award. The Estate then filed a motion for rehearing on the issue of attorney's fees and argued the district court had not considered the section of their brief which requested fees. On rehearing, the district court agreed, stating it had "erroneously overlooked" the Estate's request for attorney's fees.

Considering the merits of the Estate's request, the district court indicated the Estate had requested fees pursuant to either Idaho Code section 12-121 or Idaho Code section 15-8-208, a provision of TEDRA. The district court concluded that section 15-8-208 was inapplicable because the Estate did not file an initial petition for probate under TEDRA. *See In re Estate of Smith*, 164 Idaho 457, 432 P.3d 6 (2018). However, on review of the record, the district court was "left with the firm belief that [the Appellants] brought th[eir] appeal frivolously, unreasonably, and without foundation" and awarded the Estate attorney's fees pursuant to Idaho Code section 12-121.

Employing the four-part standard for abuse of discretion from *Lunneborg v. My Fun Life*, we hold that the district court abused its discretion by awarding the Estate attorney's fees under section 12-121. 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). While the district court did perceive the issue of attorney's fees as one of discretion, and acted within the outer boundaries of that discretion, it did not act consistently with the legal principles applicable to the question before it and with reason. *See id.*

24

In its briefing before the district court, the Estate's only mention of section 12-121 is to conclude that it is inapplicable in this case because this Court's holding in *Quemada v. Arizmendez*, 153 Idaho 609, 288 P.3d 826 (2012), dictates that Idaho Code section 15-8-208 is the appropriate attorney's fees provision in contested probate matters subject to TEDRA.[6] Additionally, the Estate's brief in support of rehearing explicitly stated it is "not pursuing the claim under I.C. § 12-121." Indeed, because the Estate clearly argued against an award under section 12-121, it made no argument concerning why the Appellants' appeal to the district court was frivolous, unfounded, or without reason. Although the district court was left with the abiding belief that the Appellants pursued their appeal frivolously, without foundation, and unreasonably, it did not act consistently with the applicable legal principals when it awarded attorney's fees without the proper foundation. Consequently, the district court abused its discretion in awarding the Estate attorney's fees under Idaho Code section 12-121.

## H. Neither party is entitled to attorney's fees on appeal.

On appeal to this Court, the Estate has clearly and unambiguously requested attorney's fees pursuant to Idaho Code section 12-121 and has also provided an argument as to why it is entitled to such fees. The Appellants have made a similar request. "Where both parties prevail in part on appeal, this Court my deny fees." *Huber v. Lightforce USA, Inc.*, 159 Idaho 833, 855, 367 P.3d 228, 250 (2016) (quoting *Caldwell v. Cometto*, 151 Idaho 34, 41, 253 P.3d 708, 715 (2011)). As such, we decline to award either party attorney's fees on appeal because both prevailed in part. The Appellants prevailed on the issue of the award of attorney's fees before the district court and the Estate prevailed with respect to the challenges to the magistrate court's ruling.

## V. CONCLUSION

We affirm the district court's decision to uphold the magistrate court's order approving the Estate's final accounting and proposed distribution. The magistrate court's findings regarding the inventory, accounting, and sale of Mr. Hirning's home are supported by substantial and competent evidence and its conclusions follow from those findings. Correspondingly, the district court's decision upholding the magistrate court's order is affirmed as a matter of procedure.

Further, the district court and the Estate's errors regarding serving documents on intermediate appeal are harmless because they did not impact the outcome of the litigation.

---

[6] The district court ultimately concluded that the attorney's fees provision of TEDRA, Idaho Code section 15-8-208 was inapplicable in this matter because the Estate did not file under TEDRA. *See In re Estate of Smith*, 164 Idaho 457, 482, 432 P.3d 6, 31 (2018). Neither party challenges this ruling on appeal.

However, the district court erred in awarding attorney's fees on appeal under Idaho Code section 12-121 and, as such, we vacate that award. Neither party is awarded costs or attorney's fees on appeal.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**